## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KEVIN NELSON and AURA NELSON, | : | |
| Plaintiffs, | : | |
| v. | : | No. 2:20-cv-05424-JMY |
| GOBRANDS, INC. (d/b/a goPuff) and GB LOGISTICS, LLC, | : | |
| Defendants. | : | |

## DEFENDANTS GOBRANDS, INC. (D/B/A GOPUFF) AND GB LOGISTICS, LLC'S MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION

Defendants GoBrands, Inc. (d/b/a goPuff) and GB Logistics, LLC (collectively, "Defendants"), by and through their undersigned counsel, hereby move this Court for an Order compelling arbitration of the claims asserted in this action by Plaintiffs Kevin Nelson and Aura Nelson (collectively, "Plaintiffs") on an individual basis, pursuant to the requirements of Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4; Section 3 of the Delaware Uniform Arbitration Act, 10 Del. C. § 5703; and/or Section 4 of the Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. Ann. § 7304. Defendants further move this Court to stay all proceedings in this action while the Plaintiffs' individual claims are arbitrated.

For each of reasons set forth in the accompanying Memorandum of Law (which is incorporated herein as if set forth in full), Defendants' Motion should be granted and an Order entered by the Court in the form proposed.

Respectfully submitted,

Dated:  November 24, 2020

s/ Cathleen M. Devlin
Cathleen M. Devlin, Esquire
Albert F. Moran, Esquire
PA Attorney ID Nos. 73680 & 318683
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-8562
cathleen.devlin@saul.com
albert.moran@saul.com

Attorneys for Defendants GoBrands, Inc.
and GB Logistics, LLC

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

KEVIN NELSON and AURA NELSON,

        Plaintiffs,

    v.

GOBRANDS, INC. (d/b/a goPuff) and
GB LOGISTICS, LLC,

        Defendants.

No. 2:20-cv-05424-JMY

**O R D E R**

    **AND NOW** this_____ day of _____, 2020, upon consideration

of Defendants GoBrands, Inc. and GB Logistics, LLC's Motion to Compel Arbitration and Stay

Action Pending Arbitration, and any opposition thereto, is hereby **ORDERED** as follows:

1.    Defendants' Motion is **GRANTED**;

2.    The claims of Plaintiffs Kevin Nelson and Aura Nelson in this action are hereby
referred to arbitration on an individual basis, to be conducted in accordance with
the terms of the applicable Technology Services Agreements entered into by
Plaintiffs; and

3.    The above-captioned action is **STAYED** during the pendency of these arbitration
proceedings.

BY THE COURT:

_____
The Honorable John Milton Younge,
U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| KEVIN NELSON and AURA NELSON, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 2:20-cv-05424-JMY |
| | : | |
| GOBRANDS, INC. (d/b/a goPuff) and | : | |
| GB LOGISTICS, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS GOBRANDS, INC. (D/B/A GOPUFF) AND GB LOGISTICS, LLC'S
MOTION TO COMPEL ARBITRATION AND
<u>STAY ACTION PENDING ARBITRATION</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT. ................................................ 1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND. ............................... 2

    A.   Factual Background. ........................................................................................ 2

        1.   Overview of GoBrands and GB Logistics. ................................................ 2

        2.   The Arbitration Provision and Other Key Terms of the Technology
            Services Agreements. ............................................................................. 2

    B.   Procedural History. ........................................................................................ 6

III. ARGUMENT. ....................................................................................................... 7

    A.   The Legal Standard Governing Motions to Compel Arbitration. ......................... 7

    B.   The Arbitration Provision in the Transportation Services Agreements Is
        Valid and Must Be Enforced. ........................................................................... 9

        1.   The Threshold Criteria for Arbitrability Are Met Here. ............................. 9

            a.   A Valid Agreement to Arbitrate Exists Between Each of
                the Plaintiff Driver Partners and Defendants. ................................. 9

            b.   The Plaintiff Driver Partners' Claims Are Covered by the
                Arbitration Provision Set Forth in the Technology Services
                Agreements. .............................................................................. 12

        2.   The Plaintiff Driver Partners' Claims Against Both GB Logistics
            and GoBrands Are Unquestionably Subject to the Arbitration
            Provision. ............................................................................................ 13

        3.   The Delegation Clause in the Arbitration Provision Is Valid and
            Enforceable. ....................................................................................... 13

    C.   The Federal Arbitration Act Requires Arbitration of this Dispute. ..................... 15

        1.   The FAA Applies to this Dispute. ............................................................ 16

        2.   The FAA's Section 1 Transportation Workers Exemption Does
            Not Apply to the Plaintiff Driver Partners. ............................................... 17

            a.   U.S. Supreme Court Precedent Requires a Narrow
                Construction of the FAA's Section 1 Exemption. ........................ 17

            b.   The Plaintiff Driver Partners' Activities Are Fundamentally
                Different from The Activities Encompassed by the
                Exemption, Such As Those of Seamen and Railroad
                Employees. ............................................................................. 18

            c.   The Plaintiff Driver Partners' Activities as Alleged Were
                  Inherently Intrastate and Localized, Such that Plaintiffs Did
                Not Engage in Interstate Commerce. ........................................ 20

D. Even if the FAA Were Inapplicable, Arbitration Would Be Properly Compelled Under State Law in Accordance with the Terms of the Technology Services Agreements.......................................................... 23

  1. Delaware Law Governs the Technology Services Agreements to the Extent that the FAA Is Inapplicable, and Requires Arbitration Here................................................................................................ 23

  2. Alternatively, Arbitration of the Plaintiff Driver Partners' Claims Should Be Compelled Under Pennsylvania Law..................................... 25

E. Under Applicable Federal And State Law, Arbitration Should Be Compelled on an Individual Basis Because the Class Action Waiver Set Forth in the Technology Services Agreements Is Valid and Enforceable. ........... 27

F. This Action Should Be Stayed During the Pendency of the Arbitration Proceedings. ..................................................................................... 29

IV. CONCLUSION................................................................................................ 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Express Corp. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................27, 28

*Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*,
No. 19-83, 2019 WL 2077731 (E.D. Pa. May 10, 2019) ..........................................9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................28

*Atwood v. Rent-A-Ctr. E., Inc.*,
No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill. May 13, 2016) .................................27

*Bituminous Cas. Corp. v. Hems*,
No. 06-1047, 2007 WL 1545641 (E.D. Pa. May 3, 2007) .....................................26

*Black v. JP Morgan Chase & Co.*,
No. 10-848, 2011 WL 3940236 (W.D. Pa. Aug. 25, 2011) ...................................28

*Brennan v. CIGNA Corp.*,
282 F. App'x 132 (3d Cir. 2008) ...................................................................9

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
809 F.3d 746 (3d Cir. 2016) .....................................................................7, 9

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ................................................................17, 18, 19, 21, 22

*Clerk v. First Bank of Del.*,
735 F. Supp. 2d 170 (E.D. Pa. 2010) ......................................................... 14-15

*Cont'l Warranty, Inc. v. Warner*,
108 F. Supp. 3d 250 (D. Del. 2015) ..............................................................10

*Curtis v. Cintas Corp.*,
229 F. Supp. 3d 312 (E.D. Pa. 2017) ..............................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ......................................................................... 11-12

*Defillipis v. Dell Fin. Servs.*,
No. 3:14-cv-00115, 2014 WL 4198015 (M.D. Pa. Aug. 22, 2014) ...........................15

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002) ................................................................................12

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ..................................................................................27, 28

*Estate of Hodges v. Meadows*,
    No. 12-cv-01698, 2013 WL 1294480 (E.D. Pa. Mar. 29, 2013) ...............................8

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...................................................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ...................................................................................................12

*Goodwin v. Elkins & Co.*,
    730 F.2d 99 (3d Cir. 1984) ......................................................................................16

*Green Tree Fin. Corp.–Ala. v. Randolph*,
    531 U.S. 79 (2000) .....................................................................................................8

*Gregoria v. Total Asset Recovery, Inc.*,
    No. 12-4315, 2015 WL 115501 (E.D. Pa. Jan. 7, 2015).................................... 25-26

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013) ......................................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ...............................................................................................13

*Hewitt v. Rose Grp.*,
    No. 15-5992, 2016 WL 2893350 (E.D. Pa. Mar. 21, 2016) ....................................9

*Hill v. Rent-A-Center, Inc.*,
    398 F.3d 1286 (11th Cir. 2005) ....................................................................20, 21, 22

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ...................................................................................................13

*Kauffman v. U-Haul Int'l, Inc.*,
    No. 5:16-cv-04580, 2018 WL 4094959 (E.D. Pa. Aug. 28, 2018) ............................ 24, 26-27

*Kocjancic v. Bayview Asset Mgmt., LLC*,
    No. 14-4037, 2014 WL 5786900 (E.D. Pa. Nov. 6, 2014) ......................................14

*Kruzits v. Okuma Mach. Tool, Inc.*,
    40 F.3d 52 (3d Cir. 1994)....................................................................................25, 26

*Kubischta v. Schlumberger Tech Corp.*,
    No. 15-1338, 2016 WL 3752917 (W.D. Pa. July 14, 2016) ............................... 28-29

*Leslie-Hughes v. Am. Express Fin. Advisors, Inc.*,
   No. 03-4460, 2004 WL 1465669 (E.D. Pa. June 29, 2004)....................................27

*Lloyd v. Hovensa, LLC*,
   369 F.3d 263 (3d Cir. 2004)..................................................................................29

*Lloyd v. MBNA Am. Bank, N.A.*,
   27 F. App'x 82 (3d Cir. 2002) ..............................................................................14

*Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Bhd. Of Teamsters, Chauffeurs,*
   *Warehousemen & Helpers of Am.*,
   443 F.2d 807 (3d Cir. 1971)..................................................................................29

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995)..........................................................................................16, 28

*McGrath v. Doordash, Inc.*,
   No. 19-cv-05279, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) .....................21, 22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)............................................................................................8, 15

*New Prime Inc. v. Oliveira*,
   139 S. Ct. 532 (2019) ..............................................................................14, 18, 19

*Palcko v. Airborne Express, Inc.*,
   372 F.3d 588 (3d Cir. 2004)..............................................................................24, 25

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
   673 F.3d 221 (3d Cir. 2012)..................................................................................28

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010).................................................................................................13

*Rittmann v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) .................................................................................22

*S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
   840 F.3d 138 (3d Cir. 2016)..................................................................................13

*Singh v. Uber Techs. Inc.*,
   939 F.3d 210 (3d Cir. 2019).................................................................8, 17, 18, 19

*Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*,
   207 F.2d 450 (3d Cir. 1953)..................................................................................19

*TP Group–CI, Inc. v. Vetecnik*,
   No. 16-623, 2016 WL 5864030 (D. Del. Oct. 6, 2016) ................................. 10-11

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) ..................................................................................................12

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) ...........................................................................................16, 28

**STATE CASES**

*Behm v. Am. Int'l Grp., Inc.*,
   No. N10C-10-013, 2013 WL 3981663 (Del. Super. Ct. July 30, 2013) ...................24

*Eagle Force Holdings, LLC v. Campbell*,
   187 A.3d 1209 (Del. 2018) .....................................................................................11

*HDS Inv. Holding Inc. v. Home Depot, Inc.*,
   No. 3968-CC, 2008 WL 4606262 (Del. Ch. Oct. 17, 2008) ...............................24-25

*James & Jackson, LLC v. Willie Gary, LLC*,
   906 A.2d 76 (Del. 2006) .........................................................................................25

*Kold, LLC v. Croman*,
   No. N13C-05-249, 2014 WL 7008431 (Del. Super. Ct. Nov. 25, 2014) .................11

*McDonnell v. Maplebear Inc.*,
   No. CGC-20-585037, slip op. (Cal. Super. Ct. Oct. 22, 2020) ...............................22

*McLaughlin v. McCann*,
   942 A.2d 616 (Del. Ch. 2008) ..................................................................................8

*Moscowitz v. Theory Entm't LLC*,
   No. 2019-0780, 2020 WL 6304899 (Del. Ch. Oct. 28, 2020) .................................11

*Osborn ex rel. Osborn v. Kemp*,
   991 A.2d 1153 (Del. 2010) ......................................................................................10

*SBC Interactive, Inc. v. Corp. Media Partners*,
   714 A.2d 758 (Del. 1998) ......................................................................................7-8

**FEDERAL STATUTES**

FAA, 9 U.S.C. § 1 ..............................................................14, 15, 17, 18, 19, 20, 21, 23

FAA, 9 U.S.C. § 2 ...........................................................................................16, 17, 21

FAA, 9 U.S.C. § 3 ....................................................................................................29

FAA, 9 U.S.C. § 4 ......................................................................................................7

Railway Labor Act of 1926, 44 Stat. 577 ...................................................................19

**STATE STATUTES**

Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* ..........................................6, 7, 12

Illinois Uniform Arbitration Act, 710 Ill. Comp. Stat. 5/1 *et seq.* .................................................26

Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ....................6, 7, 12

Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. Ann. § 7303......................................27

Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. Ann. § 7304......................................27

Delaware Uniform Arbitration Act, 10 Del. C. § 5703 ................................................................24

**OTHER AUTHORITIES**

Williston on Contracts § 4:1 (4th ed. 2007)..................................................................................10

Defendants GoBrands, Inc. (d/b/a goPuff) and GB Logistics, LLC (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration and Stay Action Pending Arbitration.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiffs Kevin Nelson and Aura Nelson (collectively, "Plaintiffs" or "the Plaintiff Driver Partners") are independent delivery professionals who engaged Defendant GB Logistics, LLC ("GB Logistics") for the use of its technology services to perform delivery projects -- namely, making local deliveries of everyday goods.  These goods are picked up from various businesses, including Defendant GoBrands, Inc. ("GoBrands"), and are delivered to third-party consumers in and around Chicago, Illinois.  Before engaging the GB Logistics technology services as Driver Partners, Plaintiffs each entered into a Technology Services Agreement with GB Logistics (the "Technology Services Agreements") requiring them to, among other things, resolve any disputes with GB Logistics (and any affiliated entities of GB Logistics, including GoBrands) via arbitration on an individual basis unless they timely opted out of that provision. By failing to opt out of that provision, Plaintiffs waived their right to arbitrate on a class basis, as well as their right to pursue either individual or class adjudication of their claims in any court.

Given the well-established policies liberally favoring enforcement of arbitration agreements existing under both federal and state law, this Court must either compel Plaintiffs' claims into arbitration or defer to an arbitrator as to arbitrability of these claims, as mandated by the Technology Services Agreements.  Additionally, given Plaintiffs' express waiver of their right to litigate their disputes in court, either on an individual or class basis, this Court should impose a stay of this action while arbitration proceedings as to Plaintiffs' individual claims take place.

For each of these reasons, and as detailed below, Defendants respectfully request that this Court compel arbitration of Plaintiffs' individual claims and stay this action during the pendency of those arbitration proceedings.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.

### A.   Factual Background.

#### 1.   Overview of GoBrands and GB Logistics.

GoBrands sells various goods, including cleaning and home products, over-the-counter medications, food and drinks, and alcohol from micro-fulfillment centers.  It is headquartered in Philadelphia, Pennsylvania.  *See* Declaration of Bill Francione ("Francione Decl."), attached hereto as Exhibit A, at ¶¶ 4-5.  Consumers purchase the goods via a mobile application on a smartphone or other mobile device, or via a website.  *Id.* ¶ 6.  GB Logistics, an affiliate of GoBrands, is a technology company that generates leads for delivery transportation services and offers technology services to independent delivery professionals (such services referred to as the "Technology Services") (such professionals referred to as "Driver Partners"), including an app-based platform through which Driver Partners can make themselves available for delivery transportation services projects.  *Id.* ¶ 7.  Delivery projects from GoBrands and other entities are offered to Driver Partners via GB Logistics' app-based platform on their smartphone or other mobile device.  *Id.* ¶ 8.

#### 2.   The Arbitration Provision and Other Key Terms of the Technology Services Agreements.

The Plaintiff Driver Partners both formerly engaged GB Logistics for the Technology Services as Driver Partners.  *See* Complaint ¶¶ 13-14; Answer ¶¶ 13-14; Francione Decl. ¶ 9.  To access the Technology Services, Plaintiffs entered into a Technology Services Agreement with GB Logistics.  *Id.* ¶ 10; *see* Exhibits 1 and 2 to Francione Decl.  Among other things, the

Technology Services Agreements entered into between GB Logistics and Plaintiffs -- which are substantively identical -- include provisions plainly stating that Driver Partners are not employees of GB Logistics and, instead, "create[] a direct business relationship between [the Driver Partner] and the User." *See* Technology Services Agreements § 2.2-2.3 (providing among other things, that GB Logistics does not "direct or control" Driver Partners, and that Driver Partners "have complete discretion to provide services or otherwise engage in other business or employment activities").

The Technology Services Agreements spell out a detailed alternative dispute resolution procedure requiring that any and all claims relating to the Agreements, and "all disputes" between current or former Driver Partners and GB Logistics, be submitted to arbitration (the "Arbitration Provision"). Specifically, at Section 15.3.i, the Technology Services Agreements provide as follows:

> **This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates.** . . .

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that would otherwise be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration. Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this

Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.  All such matters shall be decided by an Arbitrator and not by a court or judge.  However, as set forth below, the preceding sentences shall not apply to disputes relating to the interpretation or application of the Class Action Waiver, including their enforceability, revocability or validity.

**Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and the Company . . . ,** as well as all disputes between You and the Company's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns and any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship.  This Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes by which the terms of this Agreement are expressly excluded from the Arbitration Provision.

Technology Services Agreements § 15.3.i (emphases added).

Additionally, the existence of the Arbitration Provision is conspicuously called out for the signatory on the first page of each Agreement, in capital letters and bold font:

IMPORTANT: PLEASE NOTE THAT TO USE THE GOPUFF SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW.  **PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION.**  BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION.  **IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION** BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.

Technology Services Agreements at 1 (capitalization in original; emphases added).  As set forth in this provision, Plaintiffs were not required to agree to the Arbitration Provision to use the Technology Services, and were conspicuously informed of their unfettered right to opt out of the Arbitration Provision.  Both Plaintiffs declined, however, to exercise their rights to opt out of the Arbitration Provision.  Francione Decl. ¶ 12; *see also* Technology Services Agreements at Signature Pages.

Three aspects of the Arbitration Provision in the Technology Services Agreements are of particular note for purposes of this Motion.  *First*, the Arbitration Provision broadly encompasses "all disputes" between signatories thereto and GB Logistics, including disputes as to arbitrability (the "Delegation Clause").  *See* Technology Services Agreements § 15.3.i.  *Second*, the Arbitration Provision provides that any disputes between the Plaintiff Driver Partners and any affiliated company of GB Logistics -- *i.e.*, GoBrands -- must also be arbitrated.  *See id.*  *Third*, the Arbitration Provision expressly states that the Federal Arbitration Act ("FAA") governs its terms.  *See id.*

In executing the Technology Services Agreements, Plaintiffs also agreed to specific choice of law and forum selection clauses.  As to these matters, the Technology Services Agreements provide as follows:

> The choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the [FAA].  Accordingly, and **except as otherwise stated in Section 15.3, the interpretation of this Agreement shall be governed by Delaware law, without regard to the choice or conflicts of law provisions of any jurisdiction**.  Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the goPuff Services that are not subject to the arbitration clause contained in Section 15.3 shall be subject to the exclusive jurisdiction of the state and federal courts located in . . . Philadelphia, Pennsylvania.  These provisions, and except as otherwise provided in Section

15.3, are only intended to specify the use of Delaware law to interpret this Agreement and the forum for dispute asserting a breach of this Agreement, and these provisions shall not be interpreted as generally extending Delaware law to you if you do not otherwise reside or provide services in Delaware. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 15.3 or to any arbitrable disputes as defined therein. Instead, as described in Section 15.3, the [FAA] shall apply to such disputes. The failure of Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Company in writing.

Technology Services Agreements § 15.1 (emphasis added). Accordingly, to any extent that the FAA does not apply to the Arbitration Provision, Delaware law applies. *See id.*

The Plaintiff Driver Partners also relinquished certain rights as to their ability to pursue a class action when they executed the Technology Services Agreements, as follows:

> **You and the Company agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver").** The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis. . . .

Technology Services Agreements § 15.3.v (emphasis added) (the "Class Action Waiver").

### B.   Procedural History.

Notwithstanding the Arbitration Provision and Class Action Waiver set forth in the Technology Services Agreements, the Plaintiff Driver Partners filed a Class Action Complaint on behalf of themselves and similarly situated Driver Partners on October 5, 2020 in the Court of Common Pleas for Philadelphia County, Pennsylvania. Plaintiffs claim that Defendants failed to compensate them, and similarly situated Driver Partners, for certain compensation they were purportedly owed as "employees" of Defendants under the Illinois Wage Payment and Collection

Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.* *See* Complaint, Dkt. No. 1, ¶¶ 23-43.

More specifically, in Count I of the Complaint, Plaintiffs claim that Defendants violated the IWPCA in failing to compensate the Plaintiffs and a proposed class for "business expenses" such as vehicle maintenance, gas, insurance, and costs related to mobile phones. *See id.* ¶¶ 32-37. In Count II of the Complaint, Plaintiffs claim that Defendants violated the IMWL by failing to pay Plaintiffs and a proposed class overtime for time worked in excess of 40 hours per week. *See id.* ¶¶ 38-43. Notably, Plaintiffs make no allegation that they ever crossed state lines to perform deliveries; instead, they claim to have worked out of Chicago, Illinois. *See id.* ¶¶ 13-14.

On October 30, 2020, Defendants removed this action to this Court. Dkt. No. 1. Defendants answered Plaintiffs' Complaint on November 6, 2020, and, in anticipation of filing this Motion, expressly reserved therein their right to move to compel arbitration under the relevant terms of the Technology Services Agreements. *See* Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint, Dkt. No. 2, at Affirmative Defenses ¶ 2.

## III.   ARGUMENT.

### A.   The Legal Standard Governing Motions to Compel Arbitration.

Because arbitration is a matter of contract, courts must compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. FAA, 9 U.S.C. § 4. In determining whether to compel arbitration, courts must examine two threshold issues of arbitrability: (1) whether a valid agreement to arbitrate exists between the parties; and (2) if so, whether the agreement covers the dispute at issue. *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 756 (3d Cir. 2016) (holding that courts play a limited threshold role in determining "whether the parties are bound by a given arbitration clause and whether an arbitration agreement applies to a particular type of controversy"); *SBC Interactive, Inc. v. Corp.*

*Media Partners*, 714 A.2d 758, 761 (Del. 1998) (concluding that because Delaware has a strong policy favoring arbitration, courts are only tasked with determining whether an arbitration contract is valid and whether the dispute is encompassed within that contract); *Estate of Hodges v. Meadows*, No. 12-cv-01698, 2013 WL 1294480, at *6 (E.D. Pa. Mar. 29, 2013) (same, in context of Pennsylvania law).[1]

As such, if there is any doubt as to the proper interpretation of the applicable agreement on any issue related to arbitrability, "[it] should be resolved *in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added); *see also McLaughlin v. McCann*, 942 A.2d 616, 621 (Del. Ch. 2008). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid, or that it does not encompass the claims at issue. *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Finally, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation and internal quotation marks omitted); *accord Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019).[2]

---

[1]   Choice of law issues are addressed in Sections III.C and III.D herein. While Defendants assert that the FAA governs the Arbitration Provision, the Plaintiff Driver Partners are expected to dispute this, so Defendants have analyzed the relevant issues under Delaware and Pennsylvania law in addition to the FAA. Arbitration must be compelled under both Delaware and Pennsylvania law.

[2]   While Plaintiffs did not attach the Technology Services Agreements to their Complaint, the Technology Services Agreements are properly before the Court because Plaintiffs'

**B.**     **The Arbitration Provision in the Transportation Services Agreements Is Valid and Must Be Enforced.**

    **1.**     **The Threshold Criteria for Arbitrability Are Met Here.**

The Plaintiff Driver Partners' claims must be pursued on an individual basis in arbitration. This is because both of the fundamental threshold criteria embraced by federal and state courts nationwide, including the Third Circuit, for evaluating arbitrability are plainly satisfied here: (a) a valid agreement to arbitrate existing between the parties; and (b) a dispute between the parties that is squarely within the scope of the agreement to arbitrate. *See Chesapeake Appalachia,* 809 F.3d at 756.

    **a.**     **A Valid Agreement to Arbitrate Exists Between Each of the Plaintiff Driver Partners and Defendants.**

The existence of a valid agreement to arbitrate between the Plaintiff Driver Partners and Defendants cannot be legitimately disputed in this matter. State law principles governing contract formation determine whether the parties have agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Brennan v. CIGNA Corp.*, 282 F. App'x 132, 135 (3d Cir. 2008). Because the choice of law provision in the Technology Services Agreements designates Delaware law as governing all matters involving the Agreements aside from the Arbitration Provision, Delaware contract principles control. Under Delaware law, a contract is

---

claims arise from them, as explained below in Section III.B.1.b. *See, e.g., Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) (applying Rule 12(b)(6) standard even though the complaint did not refer to the arbitration agreement because the plaintiff's allegations fell within the scope of the agreement); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315-16 (E.D. Pa. 2017) (concluding that Rule 12(b)(6) standard applied where the complaint did not mention the arbitration agreement because the agreement, which was attached to the defendant's motion, was "clearly integral to [the plaintiff's] claims," and the plaintiff did not contest the agreement's authenticity); *see also Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) ("It would frustrate the purposes of the [FAA] if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints.").

formed if the following elements exist: (1) a mutual manifestation of an intention to be bound;

(2) terms sufficiently definite to be enforced; and (3) consideration.  *See Osborn ex rel. Osborn*

*v. Kemp*, 991 A.2d 1153, 1158 n.12 (Del. 2010).  Each of these elements are satisfied here.

In assessing intent, this Court must consider the intent a reasonable person would

apprehend in considering the parties, and not the inner, subjective intent of the parties.  *See*

*Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 250, 253 (D. Del. 2015); *see also* Williston on

Contracts § 4:1 (4th ed. 2007) ("In the formation of contracts . . . it was long ago settled that

secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and

words rather than by the hidden, subjective or secret intention of the parties.").

Here, Plaintiffs demonstrated their intent to be bound by the Technology Services

Agreements by executing them.  Notably, on the Signature Page of the Technology Services

Agreements, both Plaintiffs attested that "[b]y signing this form, [they] expressly

acknowledge[d] that [they] have read, understood, and taken steps to thoughtfully consider the

consequences of this Agreement, that [they] agree[d] to be bound by the terms and conditions of

the Agreement, and that [they were] legally competent to enter into this Agreement with [GB

Logistics]."  Moreover, both Plaintiffs accepted projects from GB Logistics after executing the

Technology Services Agreements.  *Compare* Technology Services Agreements at Signature Page

*with* Complaint at ¶¶ 13-14.  Accordingly, based on Plaintiffs' overt conduct, any reasonable

person would conclude that they manifested the intent to be bound by the terms of the

Technology Services Agreements.[3]

---

[3]     Even were Plaintiffs to argue that they did not read the Technology Services Agreements
        prior to executing them, "[t]he law is well settled . . . that failure to read a contract does
        not excuse performance.  A party to a contract cannot silently accept its benefits and then
        object to its perceived disadvantages, nor can a party's failure to read a contract justify its

In Delaware, the terms of an agreement "are sufficiently definite if they 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018) (quoting Restatement (Second) of Contracts § 33(2)).  Here, the terms of the Arbitration Provision (and the Technology Services Agreements as a whole) are clear and straightforward.

Finally, mutual promises constitute adequate consideration under Delaware law.  *See, e.g.*, *Moscowitz v. Theory Entm't LLC*, No. 2019-0780, 2020 WL 6304899, at *13 (Del. Ch. Oct. 28, 2020).  "When analyzing consideration issues, this Court must limit its inquiry to whether sufficient consideration exists, and not whether the alleged consideration is fair or adequate." *Kold, LLC v. Croman*, No. N13C-05-249, 2014 WL 7008431, at *3 (Del. Super. Ct. Nov. 25, 2014).  Here, both Plaintiffs and GB Logistics agreed to be legally bound by the Arbitration Provision; accordingly, there is adequate consideration.

In summary, each of the elements necessary to establish a binding contract has been satisfied here, and the Technology Services Agreements, including the Arbitration Provision set forth therein, constitute enforceable contracts.  Thus, on the face of the Complaint, which is premised on these Technology Services Agreements, the Plaintiff Driver Partners' claims against Defendants are subject to the Arbitration Provision and the Class Action Waiver.  Indeed, Plaintiffs' Complaint contains no allegations that, if true, would support any argument that the Technology Services Agreements are invalid or unenforceable.  Accordingly, Plaintiffs' claims are arbitrable under the terms of the Technology Services Agreements they signed, and this Court should compel Plaintiffs to arbitrate their claims. *See Dean Witter Reynolds, Inc. v. Byrd*,

---

avoidance." *TP Group–CI, Inc. v. Vetecnik*, No. 16-623, 2016 WL 5864030, at *1 (D. Del. Oct. 6, 2016) (internal citation and quotations omitted).

470 U.S. 213, 218 (1985) ("district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original).

> **b.** **The Plaintiff Driver Partners' Claims Are Covered by the Arbitration Provision Set Forth in the Technology Services Agreements.**

"[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). This Court must conclude that disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "[d]oubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (concluding that statutory employment claims were subject to arbitration pursuant to parties' agreement because having "made the bargain to arbitrate, the party should be held to it") (citation omitted).

Here, there is no ambiguity whatsoever in the Arbitration Provision, which makes clear that the Plaintiff Driver Partners' claims fall squarely within the scope of thereof and that Plaintiffs' claims are subject to arbitration. Specifically, Plaintiffs agreed that the Arbitration Provision would apply to "[a]ny dispute arising out of related to" the Technology Services Agreements and even more broadly to "all disputes between" Plaintiffs and GB Logistics and/or affiliated companies of GB Logistics such as GoBrands. *See* Technology Services Agreements at § 15.3(i).

All of Plaintiffs' claims arise from, and relate to, the Technology Services Agreements because they are based on the theory that Defendants misclassified Plaintiffs as independent contractors and underpaid them relative to the alleged requirements of the IWPCA and IMWL.

There is therefore no question that Plaintiffs' claims fall within the broad scope of the Arbitration Provision, and are arbitrable in conformity with the terms of thereof.

    2.    **The Plaintiff Driver Partners' Claims Against Both GB Logistics and GoBrands Are Unquestionably Subject to the Arbitration Provision.**

While GoBrands is not a signatory to the Technology Services Agreements, the Plaintiff Driver Partners' claims against GoBrands are plainly subject to the Arbitration Provision because it expressly provides that it is applicable to GoBrands, as an affiliated company of GB Logistics:

> Except as it otherwise provides, **this Arbitration Provision also applies, without limitation to all disputes between You and the Company** . . . **, as well as all disputes between You and the Company's or Company's** fiduciaries, administrators, **affiliates**, subsidiaries, parents, and all successors and assigns and any of them . . . .

Technology Services Agreements at § 15.3(i) (emphases added); Francione Decl. at ¶ 7. Thus, in executing the Technology Services Agreements, Plaintiffs agreed that any disputes against both GB Logistics and GoBrands would be subject to arbitration.

    3.    **The Delegation Clause in the Arbitration Provision Is Valid and Enforceable.**

This Court must also determine whether the parties agreed to commit the question of arbitrability of their dispute to the Court or to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce . . . ."). If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then an arbitrator must decide them. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 143-44 (3d Cir. 2016) (enforcing

agreement to arbitrate and holding that issue of arbitrability was for arbitrator to decide, as provided by agreement between the parties).

Here, the Delegation Clause set forth in the Arbitration Provision of the Technology Services Agreements provides that, except for questions regarding the enforceability of the Class Action Waiver, it applies to "any dispute arising out of or related to this Agreement or termination of this Agreement," including "without limitation disputes arising out of relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." Technology Services Agreement § 15.3.i (stating that "[a]ll such matters shall be decided by an Arbitrator and not by a court or judge").  Accordingly, this Court should enforce this provision, decide only the applicability of the FAA's Section 1 exemption and the enforceability of the Class Action Waiver,[4] and otherwise refer the Plaintiff Driver Partners' claims to arbitration. *See Kocjancic v. Bayview Asset Mgmt., LLC*, No. 14-4037, 2014 WL 5786900, at *5 (E.D. Pa. Nov. 6, 2014) (enforcing delegation clause that carved out challenges to class, collective, and representative waivers); *see also New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019) (explaining that a court "should decide for itself" whether the FAA's § 1 exemption applies "before ordering arbitration" notwithstanding an applicable delegation clause).

Plaintiffs cannot be heard to complain that they did not bind themselves to the Delegation Clause in the Arbitration Agreement.  In this regard, Courts have repeatedly held that if an arbitration agreement provides an opportunity to opt out, it is not a contract of adhesion and there can be no finding of procedural unconscionability.  *See, e.g.*, *Lloyd v. MBNA Am. Bank, N.A.*, 27 F. App'x 82, 85 (3d Cir. 2002); *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 183 (E.D. Pa.

---

[4]        These issues are respectively addressed in Section III.C.2 and Section III.E below.

2010) (collecting cases).  Moreover, courts have consistently upheld delegation clauses set forth in voluntary arbitration agreements.  *See, e.g.*, *Defillipis v. Dell Fin. Servs.*, No. 3:14-cv-00115, 2014 WL 4198015, at *6 (M.D. Pa. Aug. 22, 2014).

Here, GB Logistics conspicuously notified each of the Plaintiff Driver Partners of their right to opt out of the Arbitration Provision on the very first page of the Technology Services Agreements, which instructed Plaintiffs to review the Arbitration Provision carefully and informed them of their ability to "opt out of the Arbitration Provision" if they did not "wish to be subject to arbitration."  *See* Technology Services Agreements at 1.  Plaintiffs subsequently executed the Technology Services Agreements, declining to opt out of the Arbitration Provision, and in so doing acknowledged that they had "read, understood, and taken steps to thoughtfully consider the consequences of this Agreement" and that they agreed to be bound by its "terms and conditions."  *See id.* at Signature Pages; *see also* Francione Decl. ¶ 12.

Accordingly, the Delegation Clause of the Arbitration Provision is binding upon Plaintiffs, and (excepting the applicability of the FAA's Section 1 exemption and the Class Action Waiver) the threshold question of arbitrability should be determined by an arbitrator, and not by this Court.  However, as detailed above, even if this Court were to find that it, and -- not an arbitrator -- may properly determine the question of arbitrability despite the Delegation Clause in the Arbitration Provision, arbitration should still be compelled.

**C.**      **The Federal Arbitration Act Requires Arbitration of this Dispute.**

The FAA instructs courts to treat arbitration agreements as "valid, irrevocable, and enforceable" and establishes a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone*, 460 U.S. at 24.  Because the statute is designed to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *See id.* at 22,

24-25.  Under these well-established FAA principles, the Plaintiff Driver Partners' claims are properly compelled to be arbitrated on an individual basis, in conformity with the terms of the Technology Services Agreements, and not resolved in court.

**1.     The FAA Applies to this Dispute.**

The FAA compels judicial enforcement of a wide range of written arbitration agreements arising from transactions "involving commerce," providing as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

FAA, 9 U.S.C. § 2; *see also Goodwin v. Elkins & Co.*, 730 F.2d 99, 108-09 (3d Cir. 1984) (concluding that, for the FAA to apply, a court must find that the contract containing the arbitration provision at issue "evidenc[es] a transaction involving commerce"), *cert. denied*, 469 U.S. 831 (1984).

Here, the Arbitration Provision in the Technology Services Agreements is governed by the FAA for two independent reasons.  *First*, the Arbitration Provision expressly states that it is governed by the FAA, which is sufficient to bring it within the purview of the FAA.  *See* Technology Services Agreements § 15.3.i; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54, 64 (1995).  Because "[a]rbitration under the [FAA] is a matter of consent, not coercion," courts must "give effect to the contractual rights and expectations of the parties."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  Pursuant to U.S. Supreme Court precedent, this Court should give effect to the parties' binding agreement as set forth in the Arbitration Provision and apply the FAA.  *Second*, the FAA applies because Defendants' business activities (but not those of Plaintiffs, as explained

more fully below) involve commerce and therefore fall within the broad reach of Section 2 of the FAA.  *See* Complaint ¶ 7; Francione Decl. ¶¶ 4, 7; *see also* 9 U.S.C. § 2.

> ### 2.    The FAA's Section 1 Transportation Workers Exemption Does Not Apply to the Plaintiff Driver Partners.

Defendants anticipate that Plaintiffs will argue that the FAA does not apply because of the FAA's Section 1 exemption, which provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of *workers engaged in foreign or interstate commerce*."  FAA, 9 U.S.C. § 1 (emphasis added).  This argument is defective and misguided, and should be rejected by this Court.

> #### a.    U.S. Supreme Court Precedent Requires a Narrow Construction of the FAA's Section 1 Exemption.

The U.S. Supreme Court has cautioned that the FAA's Section 1 exemption is to "be afforded a narrow construction," and exempts only "seamen, railroad employees" and other "similar" interstate "transportation workers."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-19 (2001)[5]; *see also Singh*, 939 F.3d at 221 (explaining that the exemption "only includes those workers that are engaged in foreign or interstate commerce in a manner similar to seamen and railroad employees").  This "precise reading" of Section 1 is required to remain consistent with Congressional intent for the FAA to overcome judicial hostility to arbitration agreements. *See Circuit City*, 532 U.S. at 118-19 (emphasizing that "the fact that the provision is contained in a statute that seeks broadly to overcome judicial hostility to arbitration agreements" counsels in

---

[5]    The Court, looking to the statutory language, concluded that the words "any other class of workers engaged in . . . commerce," gave "effect to the terms 'seamen' and 'railroad employees.'"  *Id.* at 114-15.  The Court found that the residual phrase "any other class of workers engaged . . . in interstate commerce" should be "controlled and defined by reference to the enumerated categories of workers which are recited just before it." *Id.* at 115.   Thus, to be exempt from the FAA, a worker must be considered to be a "transportation worker" who, in a similar way as seamen and railroad employees, "engage[s] in . . . interstate commerce."  *Id.* at 114.

favor of a "precise reading of a provision that exempts contracts from the FAA's coverage") (citation and internal quotations omitted).

This Court must therefore construe the FAA's Section 1 exemption according to its ordinary meaning when the FAA was enacted in 1925, and narrowly, consistent with the structure and pro-arbitration purposes of the statute. *See New Prime*, 139 S. Ct. at 539; *Circuit City*, 532 U.S. at 118. Here, the exemption does not apply because, as Driver Partners accepting projects through the Technology Services offered by GB Logistics, Plaintiffs (1) cannot be considered akin to seamen, railroad employees, and similar transportation workers; and (2) did not engage in interstate commerce.

> **b.** **The Plaintiff Driver Partners' Activities Are Fundamentally Different from The Activities Encompassed by the Exemption, Such As Those of Seamen and Railroad Employees.**

The Plaintiff Driver Partners cannot meet their burden to establish that the FAA's narrow Section 1 exemption applies to them, because they contracted to provide local delivery services. Importantly, in enacting the FAA, Congress exempted a specific group of transportation workers -- seamen, railroad employees, and other similar workers engaged in foreign or interstate commerce -- from the FAA. Congress did so not because it believed arbitration to be improper for such employees, but because "[b]y the time the FAA was passed, Congress had already enacted legislation providing for the arbitration of disputes between seamen and their employers" and for "grievance procedures . . . for railroad employees." *Circuit City*, 532 U.S. at 121 (citing Shipping Commissioners Act of 1872, 17 Stat. 262, and Transportation Act of 1920, §§ 300-316, 41 Stat. 456).[6] Additionally, at the time the FAA was enacted in 1925, "the passage of a more

---

[6] While the Court need not consider the legislative history of the statute where, as here, the statutory text is determinative, *see Circuit City*, 532 U.S. at 119; *see also Singh*, 939 F.3d at 224 (finding that the textual analysis of the FAA, as outlined above, was

comprehensive statute providing for the mediation and arbitration of railroad labor disputes was imminent" with the Railway Labor Act of 1926, 44 Stat. 577, which Congress extended to the airline industry in 1936. *Circuit City*, 532 U.S. at 121. Therefore, the U.S. Supreme Court concluded that "[i]t is reasonable to assume that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." *Id.*

More recently, the U.S. Supreme Court has observed that Congress likely excluded certain transportation workers from the FAA because Congress "had already prescribed alternative employment dispute resolution regimes for many transportation workers" when the FAA was adopted in 1925, which Congress seemingly "did not wish to unsettle." *See New Prime*, 139 S. at 537.[7]

In accordance with *Circuit City*'s instructions to read the Section 1 exemption narrowly, this Court should conclude that the Plaintiff Driver Partners do not come within the Section 1 exemption. Plaintiffs are in no way analogous to seamen or railroad employees, whose primary job is to transport good and passengers across state and national boundaries, and who habitually cross their boundaries as a regular part of their job duties. *See Circuit City*, 532 U.S. at 114; *Singh*, 939 F.3d at 221; *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 452-53 (3d Cir. 1953). Instead, Plaintiffs signed up to be local Driver Partners -- to

---

"determinative"), Defendants briefly address the FAA's legislative history here in further support of their position.

[7]    In *Singh*, the Third Circuit was faced with the question of whether the Section 1 exemption applies to transportation workers that transport passengers rather than goods. The Third Circuit declined to resolve the question of whether local drivers fall under the Section 1 exemption. As recognized in *Singh*, the U.S. Supreme Court in both *Circuit City* and *New Prime* concluded that the FAA's legislative history provides a plausible explanation for Congress's exclusion of transportation workers from the FAA. *See* 939 F.3d at 225.

accept projects to deliver food and goods from one local destination to another.  Simply put, Plaintiffs do not fall within the limited categories of workers that Section 1 was designed to encompass.  The application of the Section 1 exemption here would thus contravene both the FAA's statutory text and Congressional intent, and would violate the U.S. Supreme Court's mandate that the FAA Section 1 exemption be given a "narrow construction."  Accordingly, should find the FAA Section 1 exemption to be inapplicable.

> ### c. The Plaintiff Driver Partners' Activities as Alleged Were Inherently Intrastate and Localized, Such that Plaintiffs Did Not Engage in Interstate Commerce.

The Plaintiff Driver Partners are also not subject to the FAA Section 1 exemption because they have not alleged, and cannot show, that they were engaged in foreign or interstate commerce.  While Defendants engage in interstate commerce, the work performed by Plaintiff Driver Partners was exclusively intrastate in nature.

The Eleventh Circuit's thoughtful analysis in *Hill v. Rent-A-Center, Inc*., regarding whether a given worker is a transportation worker involved in foreign or interstate commerce, is instructive.  398 F.3d 1286, 1289-90 (11th Cir. 2005).  As explained by the court in *Hill*, "[t]here is no indication that Congress would be any more concerned about the regulation of the interstate transportation activity incidental to [the plaintiff's] employment as an account manager, than it would in regulating the interstate 'transportation' activities of an interstate traveling pharmaceutical salesman who incidentally delivered products in his travels, or a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town."  *Id.*

Here, importantly, Plaintiffs do not allege anywhere in their Complaint that they crossed state lines to perform deliveries.  They are therefore not meaningfully different from the pizza delivery person referenced in *Hill*, or the local food delivery drivers referenced in various other cases discussed below, in that they contracted with GB Logistics to make local, short-distance

deliveries to third-party customers.  *See Hill*, 398 F.3d at 1289 (explaining that the FAA exemption applies only to "a class of workers in the transportation industry, rather than [to] workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated"); *McGrath v. DoorDash, Inc.*, No. 19-cv-05279, 2020 WL 6526129, at *7-8 (N.D. Cal. Nov. 5, 2020) (concluding that because there was no indication that delivery driver plaintiffs crossed state lines in connection with the work they performed, the FAA's transportation worker exemption was inapplicable).

This Court should not conflate the general applicability of the FAA under Section 2 with the applicability of the Section 1 exemption by broadening the scope of Section 1's exemption to cover the Plaintiff Driver Partners, simply because GoBrands sells goods that may be manufactured in various locations across the United States.[8]  The text of Section 1 and its place within the broader context of the FAA wholly fail to support such a sweeping interpretation of the phrase "interstate commerce" as used in the Section 1 exemption.  The phrase "engaged in foreign or interstate commerce" describes the *type of worker*, not the work engaged in by the entity operating the business.[9]  Thus, "[t]o broaden the scope of § 1's arbitration exemption to

---

[8]     It is worthy of note that neither GoBrands nor GB Logistics are transportation companies. Further, GB Logistics does not sell goods, such that any claim that GB Logistics participates in interstate commerce in the same way that GoBrands does is without merit. In any event, Plaintiffs did not contract with GoBrands.

[9]     This distinction is further evidenced by the fact that the Section 1 exemption is drafted more narrowly than Section 2, which deals with the general applicability of the FAA.  In Section 2, Congress made the FAA apply to any contract "involving commerce," which "signals an intent to exercise Congress' commerce power to the full[est]" and ensures that the FAA is applied broadly.  *See Circuit City,* 532 U.S. at 115-16 (citation omitted). Congress chose not to use the same phrase in describing Section 1's exemption, however, and instead used the phrase "engaged in foreign or interstate commerce," which is "narrower than the more open-ended formulation[] 'involving commerce'" found in Section 2. *Id.* at 118. This decision to use a term with "a more limited reach" in Section 1 demonstrates Congressional intent to exempt a very narrow class of workers from the

encompass any [ ] disputes of a worker [engaged] by a company [which company's] business dealings happen to cross state lines, would allow § 1's exemption to swallow the general policy requiring the enforcement of arbitration agreements as pronounced in § 2 of the FAA." *Hill*, 398 F.3d at 1290.

Indeed, several courts have held in similar matters that the FAA applied to arbitration agreements involving alleged transportation workers yet those same workers were <u>not</u> exempt from the FAA under Section 1 because they were not engaged in interstate commerce. *See, e.g.*, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020) (citing cases and explaining that "local food delivery drivers are not engaged in the interstate transport of goods because the prepared meals from local restaurants are not a type of good that are indisputably part of the stream of commerce") (citations and internal quotations omitted); *id.* at 915 (distinguishing between local food delivery drivers from Amazon.com delivery drivers who "carry . . . goods that remain in the stream of interstate commerce until they are delivered"); *McGrath*, 2020 WL 6526129, at *8 (adopting *Rittmann*'s analysis); *McDonnell v. Maplebear Inc.*, No. CGC-20-585037, slip op. at 3 (Cal. Super. Ct. Oct. 22, 2020) (explaining that the "focus" is "on whether the stream of commerce is broken by the process ending at one location").[10]

In this case, consistent with the Ninth Circuit's holding in *Rittmann*, any antecedent interstate commercial activity in which GoBrands engaged ceased when the products GoBrands purchased for inventory came to rest at micro-fulfillment centers, which concluded the interstate transactions. 971 F.3d at 916. At that point, the products became available for sale to customers of GoBrands. Just as the ingredients of a pizza may be manufactured in various locations across

---

FAA, so as to promote the FAA's fundamental goal of "compel[ing] judicial enforcement of a wide range of written arbitration agreements." *Id.* at 111, 115.

[10]   A true and correct copy of this Opinion is attached hereto as Exhibit B.

the United States and then are sold and delivered locally as pizzas, GoBrands' inventory does not arrive pre-sold.  Instead, it comes to rest at the micro-fulfillment centers and, once there, is placed into inventory to be available for localized sale and delivery to customers, with delivery being the sole activity in which Plaintiffs engaged.  Indeed, Plaintiffs allege in their Complaint that their work simply involved picking up items from those "local" micro-fulfillment centers and delivering them to third-party customers within the "territory" of Chicago.  *See* Complaint ¶¶ 9, 13-14.  As such, Plaintiffs cannot be considered to be engaging in interstate commercial activities in making these local deliveries.

In sum, Plaintiffs and other Driver Partners work in localized intrastate markets to deliver food, beverages, and everyday goods to third-party consumers.  This work -- which stands entirely separate and apart from any interstate commerce in which Defendants participate -- does not constitute "engage[ment] in foreign or interstate commerce."  Accordingly, this Court should decline to expand the Section 1 exemption to cover workers like Plaintiffs, and should compel arbitration of Plaintiffs' claims under the FAA.[11]

### D.   Even if the FAA Were Inapplicable, Arbitration Would Be Properly Compelled Under State Law in Accordance with the Terms of the Technology Services Agreements.

#### 1.   Delaware Law Governs the Technology Services Agreements to the Extent that the FAA Is Inapplicable, and Requires Arbitration Here.

Even if the FAA were inapplicable, arbitration of the Plaintiff Driver Partners' claims would still be properly compelled by this Court under Delaware law.  According to the Third Circuit, an arbitration agreement should be enforced under applicable state law pursuant to the parties' agreement, even where the FAA Section 1 exemption applies, because "the effect of

---

[11]   In the event that the Court believes that a factual dispute may exist as to the applicability of the FAA Section 1 exemption, discovery is not necessary, given that this Court may alternatively compel arbitration under relevant state statutes that do not contain any transportation workers exemption, as explained in Section III.D below.

Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the [Federal] Arbitration Act had never been enacted." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (explaining that where the FAA is inapplicable because of the Section 1 exemption, an arbitration agreement should be enforced under state law to "further[] the general policy goals of the FAA favoring arbitration") (citation omitted). Here, enforcement of the Technology Services Agreements "as if the FAA had never been enacted" requires arbitration of Plaintiffs' individual claims under Delaware law.

As noted above, the choice of law provision in the Technology Services Agreements states that the agreement is "governed by Delaware law," except that the Arbitration Provision is covered by the FAA. *See* Technology Services Agreements § 15.1. Further, the parties to the Technology Services Agreements agreed that "in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable." *Id.* at § 15.3.ix; *see also Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2018 WL 4094959, at *5 (E.D. Pa. Aug. 28, 2018) (explaining that "an arbitration clause can be enforced under state law even in the absence of a state law contingency provision"). Accordingly, if the parties' choice of the FAA is unenforceable because the FAA does not apply, then Delaware law would apply to the Arbitration Provision.

The Arbitration Provision is plainly enforceable under the Delaware Uniform Arbitration Act, which does not have any exemption for workers engaged in transportation. *See* 10 Del. C. §§ 5701-5715. Delaware law applies a "strong presumption in favor of arbitration," such that "contractual arbitration clauses are generally interpreted broadly." *Behm v. Am. Int'l Grp., Inc.*, No. N10C-10-013, 2013 WL 3981663, at *5 (Del. Super. Ct. July 30, 2013). Indeed, Delaware's strong policy favoring arbitration is very similar to the FAA's pro-arbitration policy. *HDS Inv.*

*Holding Inc. v. Home Depot, Inc.*, No. 3968-CC, 2008 WL 4606262, at *4 (Del. Ch. Oct. 17, 2008), *abrogated on different grounds by Viacom Int'l, Inc. v. Winshall*, 72 A.3d 78 (Del. 2013); *see also James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) (explaining that "Delaware arbitration law mirrors federal law").

Additionally, the Third Circuit's decision in *Palcko* requires this Court to enforce the Arbitration Provision in the Transportation Services Agreements under state law to the extent the FAA is inapplicable.  372 F.3d at 596.  In *Palcko*, the Third Circuit applied Washington state law to enforce an arbitration agreement with a transportation worker even after concluding that the FAA was inapplicable due to the Section 1 exemption.  *Id.* ("We see no reason to release the parties from their own agreement.").  The Third Circuit specifically rejected the argument that the Section 1 exemption preempts the enforcement of the arbitration agreement under state law. *Id.*  Similarly, this Court should enforce the parties' arbitration agreement under Delaware law and compel arbitration under 10 Del. C. § 5703 to the extent the FAA is inapplicable.

        **2.**       **Alternatively, Arbitration of the Plaintiff Driver Partners' Claims Should Be Compelled Under Pennsylvania Law.**

In the event that the Court were to determine that both the FAA and Delaware law do not apply for any reason, the Court should compel the Plaintiff Driver Partners' claims to be arbitrated under Pennsylvania law.

Because this is a diversity case, this Court must apply Pennsylvania's choice of law principles.  *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.").  Pennsylvania courts will enforce choice of law provisions set forth in contracts, provided that the contract bears some relation to the chosen jurisdiction and public policies of Pennsylvania are not offended.  *See Gregoria v. Total Asset Recovery, Inc.*, No. 12-4315, 2015 WL 115501, at *3-

4 (E.D. Pa. Jan. 7, 2015) (citations omitted).  Here, the Court should enforce the parties' choice of law provision in the Transportation Services Agreements and apply Delaware law because this provision is not inconsistent with Pennsylvania public policies and the contract has a relation to Delaware, in that both Defendants are incorporated there.  *See id.*; *see* Defendants' Answer and Affirmative Defenses to Plaintiffs' Class Action Complaint, Dkt. No. 2 at ¶¶ 3-4; *see also Kruzits*, 40 F.3d at 55 ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.").

If, however, this Court determines that Delaware law is somehow inapplicable, this Court must determine if there is a real conflict between the forum state's laws and another the potentially applicable laws of another state.  *Bituminous Cas. Corp. v. Hems*, No. 06-1047, 2007 WL 1545641, at *3 (E.D. Pa. May 3, 2007).  Under general conflict of law principles, where the laws of two jurisdictions would produce the same result on a particular issue, there is a "false conflict" and the court should avoid the choice of law question.  *Id.*  Here, only two other jurisdictions are potentially applicable: Pennsylvania law, as the forum state, or Illinois law, because Plaintiffs reside in Illinois, entered into the Technology Services Agreements in Illinois, and performed work pursuant to the Technology Services Agreements in Illinois.

Because there is no conflict between Pennsylvania law and Illinois law, Pennsylvania law should apply to the extent that Delaware law is inapplicable.  Both jurisdictions have strong public policies that favor arbitration, and have codified similar processes to uphold this policy through the Pennsylvania Uniform Arbitration Act and the Illinois Uniform Arbitration Act.  *See* 42 Pa. Cons. Stat. Ann. § 7301, *et seq.*; 710 Ill. Comp. Stat. Ann. 5/1, *et seq.*  Indeed, both jurisdictions' arbitration statutes closely track the FAA with one key difference -- the absence of the transportation workers exemption set forth in Section 1 of the FAA.  *See Kauffman*, 2018 WL

4094959, at *5; *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-cv-1023, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016).

Accordingly, in the event that both the FAA and Delaware law are inapplicable, the Pennsylvania Uniform Arbitration Act requires the enforcement of the arbitration agreement in the Technology Services Agreements, and this Court should compel Plaintiffs to arbitrate their claims under Pennsylvania law.  *See* 42 Pa. Cons. Stat. Ann. § 7303 ("A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity . . . ."); *see also id.* § 7304(a) ("On application to a court to compel arbitration made by a party showing an agreement described in section 7303 . . . and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration."); *see also Leslie-Hughes v. Am. Express Fin. Advisors, Inc.*, No. 03-4460, 2004 WL 1465669, at *1 (E.D. Pa. June 29, 2004) (explaining that "Pennsylvania rules mirror federal rules governing arbitration . . .).

### E.  <u>Under Applicable Federal And State Law, Arbitration Should Be Compelled on an Individual Basis Because the Class Action Waiver Set Forth in the Technology Services Agreements Is Valid and Enforceable.</u>

Arbitration of the Plaintiff Driver Partners' claims should be compelled here solely on an individual basis, because the Class Action Waiver set forth in the Technology Services Agreements is valid and enforceable.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (holding that arbitration agreements providing for individualized proceedings must be enforced as written); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (enforcing class action waiver in arbitration agreement).  The Class Action Waiver not only empowers this court to make this determination, but indeed requires it.  *See* Technology Services Agreements at §

15.3.v. (providing that Plaintiffs agreed to "resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis").

It is well-settled that class action waivers in arbitration agreements governed by the FAA are valid and enforceable. The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info.*, 489 U.S. at 478-79; *see also Mastrobuono*, 514 U.S. at 53-54, 64 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA). Recently, the U.S. Supreme Court held that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619, 1632; *see also Am. Express*, 570 U.S. at 233 (enforcing class action waiver in arbitration agreement and noting that courts "must rigorously enforce" arbitration agreements) (citation omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347-52 (2011) (holding that the FAA preempts state law regarding the unconscionability of class action waivers and finding class action waivers in arbitration agreements enforceable).

Further, both Delaware and Pennsylvania law apply standards akin to the FAA as to class action waivers, and have conformed their analysis of class action waivers so as not to preempt the FAA. *See Black v. JP Morgan Chase & Co.*, No. 10-848, 2011 WL 3940236, at *12 (W.D. Pa. Aug. 25, 2011) (explaining rule in Delaware that arbitration clauses are not unconscionable because they preclude class actions), *report and recommendation adopted*, No. 2:10-cv-848, 2011 WL 4089411 (W.D. Pa. Sept. 14, 2011); *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 232-33 (3d Cir. 2012) (explaining that any Pennsylvania law that may have prohibited class action waivers is preempted by the FAA under *Concepcion*); *Kubischta v. Schlumberger*

*Tech Corp.*, No. 15-1338, 2016 WL 3752917, at *5-7 (W.D. Pa. July 14, 2016) (concluding that class action waiver was not unconscionable under Pennsylvania law).

Accordingly, under either the FAA or the relevant states' laws, this Court should require Plaintiffs to arbitrate on an individual basis because the Class Action Waiver set forth in the Technology Services Agreements is valid and enforceable, and requires that Plaintiffs do so.

### F.   <u>This Action Should Be Stayed During the Pendency of the Arbitration Proceedings.</u>

Finally, Defendants respectfully request that the Court stay this action until arbitration proceedings addressing the Plaintiff Driver Partners' claims are concluded.  *See* FAA, 9 U.S.C. § 3 (providing that if suit is brought "upon any issue referable to arbitration," the court "shall on application of one of the parties stay the trial . . . until such arbitration" is complete); *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 270 (3d Cir. 2004) (holding that the plain language of FAA § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration); *see also Mason-Dixon Lines, Inc. v. Local Union No. 560, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 443 F.2d 807, 809 (3d Cir. 1971) ("This court had held that 'a stay of proceedings pending arbitration . . is within the inherent power of a (district) court . . . .") (citation omitted).

IV.     <u>**CONCLUSION.**</u>

The Technology Services Agreements are binding contracts that are unquestionably enforceable by Defendants to require the Plaintiff Driver Partners to arbitrate their claims on an individual basis.   The claims alleged in Plaintiffs' Complaint arise directly out of these Agreements and are thus subject to the Arbitration Provision and Class Action Waiver set forth therein.   Accordingly, this Court should compel Plaintiffs to arbitrate their disputes on an individual basis, stay this action during the pendency of the arbitration proceedings, and enter any such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  November 24, 2020                           s/ Cathleen M. Devlin
                                                                      Cathleen M. Devlin, Esquire
                                                                      Albert F. Moran, Esquire
                                                                      PA Attorney ID Nos. 73680 & 318683
                                                                      Saul Ewing Arnstein & Lehr LLP
                                                                      Centre Square West
                                                                      1500 Market Street, 38th Floor
                                                                      Philadelphia, PA 19102
                                                                      (215) 972-8562
                                                                      *cathleen.devlin@saul.com*
                                                                      *albert.moran@saul.com*

                                                                      Attorneys for Defendants GoBrands, Inc.
                                                                      and GB Logistics, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing *Defendants GoBrands, Inc. (d/b/a goPuff) and GB Logistics, LLC Motion to Compel Arbitration and Stay Action Pending Arbitration* and accompanying proposed Order, Memorandum of Law, Declaration of Bill Francione and associated Exhibits was served on the following counsel via the Court's electronic filing (ECF) system:

Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
Mark J. Gottesfeld, Esq.
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025

Shannon Liss-Riordan, Esq.
Olena Savytska, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116

*Attorneys for Plaintiffs*

s/ Cathleen M. Devlin
Cathleen M. Devlin

Dated:  November 24, 2020