# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KEVIN NELSON and AURA NELSON, on behalf of themselves and other similarly situated, | : : : : : | 2:20-cv-05424-JMY |
| Plaintiffs, | : : | |
| v. | : : | |
| GOBRANDS, INC. (d/b/a "goPuff") and GB LOGISTICS, LLC, | : : : | |
| Defendants. | : : : | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION

### I.  INTRODUCTION

Plaintiffs, by and through their undersigned counsel, hereby submit their opposition to the Defendants' Motion to Compel Arbitration and Stay Action Pending Arbitration ("Motion to Compel") (Dkt. 9).[1]  Plaintiffs note, at the outset, that the appropriate course of action for this Court is to first address Plaintiffs' Motion to Remand. If the Court finds that it does not have jurisdiction over this case, the case should be remanded, and the state court should rule on Defendants' Motion to Compel. Should the Court address the merits of Defendants' Motion to Compel, however, the motion should be denied in its entirety.

The Court cannot grant Defendants' motion because Plaintiffs in this case are subject to the transportation worker exemption to the Federal Arbitration Act ("FAA"), which exempts from arbitration all "contracts of employment of seamen, railroad employees, or any other class

---

[1] Defendants have filed a Motion to Compel arbitration based on Technology Service Agreements entered into between Plaintiffs and Defendant GB Logistics, LLC, which is the technology application used by Defendant goBrands, Inc., d/b/a/ goPuff. For ease of reference, Plaintiffs refer to Defendants collectively as "goPuff" throughout this brief.

of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In its bid to compel individual arbitration of Plaintiffs' claims, goPuff relies on an unduly narrow interpretation of the transportation worker exemption to the FAA), which has been rejected by multiple courts, most recently the Ninth and First Circuit Courts of Appeal. While acknowledging that goPuff is engaged in interstate commerce, and that the consumer goods its drivers deliver travel across state lines, goPuff tries to make a false distinction between the company's work and that of the Plaintiffs, arguing that Plaintiffs make deliveries solely within state lines, and, as a result, cannot be subject to the transportation worker exemption. The reality is, however, that Plaintiffs' work is an integral part of the interstate journey that brings a wide variety of goods from all over the country to customers' homes.

The Supreme Court has made clear that workers like Plaintiffs in this case qualify for the transportation worker exemption to the FAA where they deliver *goods that are "within the flow of interstate commerce*." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001) (citing Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195 (1974)) (emphasis added). Recent decisions have made clear that individuals like Plaintiffs, who deliver goods locally on the last leg of an interstate journey, and who do not themselves cross state lines, are still subject to the transportation worker exemption to the Federal Arbitration Act ("FAA"). See Rittmann v. Amazon.com, Inc., 971 F.3d 904, 911 (9th Cir. 2020) ("every other circuit to have addressed the issue presented here interpreted § 1 to exempt 'the employment contracts of workers actually *engaged in the movement of goods in interstate commerce*.' Courts did not interpret that definition to require that a worker actually cross state lines for purposes of the exemption.") (quoting Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1471 (D.C. Cir. 1997) (internal citation omitted); Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020) ("we reject Amazon's

cramped construction of Section 1's exemption for transportation workers . . . Waithaka and other last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers 'engaged in ... interstate commerce,' regardless of whether the workers themselves physically cross state lines."). In this case, as in these cases involving Amazon delivery drivers, Plaintiffs are precisely the type of transportation workers contemplated by the transportation worker exemption. Plaintiffs make deliveries of various consumer goods to customers as part of a vast interstate delivery network. Plaintiffs are therefore indisputably delivering goods that are in the flow of interstate commerce.

goPuff also argues that, even if Plaintiffs fall under the FAA's Section 1 transportation worker exemption, Plaintiffs' claims are still subject to arbitration under Delaware law. However, the arbitration provision makes clear that it is governed by the FAA, and while Plaintiffs' agreements contain a Delaware choice-of-law provision, this provision explicitly does *not* apply to the arbitration clause.[2] GoPuff's assertion that Pennsylvania law should apply is similarly unavailing.[3]  Indeed, in the <u>Rittmann</u> case, the Ninth Circuit affirmed the district court's rejection of Amazon's same argument that Defendants make here.  See <u>Rittmann v. Amazon.com, Inc.</u>, 383 F. Supp. 3d 1196, 1203 (W.D. Wash. 2019), <u>aff'd,</u> 971 F.3d 904 (9th Cir. 2020) (in a case where "the FAA is inapplicable *and the contract clearly indicates that state law*

---

[2] The arbitration provision itself clearly states that it is "governed by the Federal Arbitration Act." <u>See</u> Technology Services Agreement, Dkt. 9-1, p. 15. The Delaware choice of law provision, which goPuff relies on, is likewise clear that "[t]he choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the Federal Arbitration Act." <u>Id.</u>

[3] The sole connection between this case and Pennsylvania is the fact that goPuff has its headquarters, and central distribution center in Pennsylvania. However, there is nothing in the Plaintiffs' agreements, nor the arbitration provision, to suggest that Pennsylvania law should apply in resolving the Motion to Compel. Moreover, Plaintiffs in this case worked for goPuff in Illinois and have brought wage claims under Illinois law.

*is also inapplicable . . .* there is not a valid agreement to arbitrate."); <u>see</u> <u>also</u> <u>Palcko v. Airborne</u>

<u>Express, Inc.</u>, 372 F.3d 588, 590-96 (3d Cir. 2004)).[4] There is no room for goPuff to argue that a

state law should apply in the event Plaintiffs are found to be exempt under the transportation

worker exemption to the FAA. For these reasons, Defendants' Motion to Compel must be denied

in its entirety.

## II. FACTUAL BACKGROUND

goPuff delivers thousands of consumer and household items to individuals across the

United States. <u>See</u> Dkt. 1, p. 12, ¶¶ 7, 8. These products travel from their origin points (in various

states and countries) to warehouses across the United States, such as the Chicago warehouse in

which Plaintiffs worked. <u>Id.</u>[5] From the local warehouses, Plaintiffs and other deliver drivers take

these goods on the final part of their journey – to consumers' homes. <u>Id.</u> ¶¶ 8-9.

Plaintiffs allege that goPuff misclassified them and a class of other Illinois delivery

drivers as independent contractors and, as a result, failed to pay them overtime for hours worked

in excess of 40 a week in violation of the Illinois Minimum Wage Law ("IMWL") and has

unlawfully required them to incur business expenses, without reimbursing them for those

expenses, in violation of the Illinois Wage Payment and Collection Act ("IWPCA"). <u>See</u> Dkt. 1,

Ex. A. Plaintiffs filed this putative class action in the Philadelphia County Court of Common

---

[4] Even if the Court decides to analyze the arbitration agreement under state law, which there is no basis to do under the contract, it should find that the arbitration agreement is unenforceable. The vast majority of states that have addressed this issue have held arbitration agreements containing class action waivers to be illegal under state law, including in Pennsylvania and Illinois. <u>See</u>, <u>e.g.</u>, <u>Kinkel v. Cingular Wireless LLC</u>, 223 Ill. 2d 1, 22-45 (2006) (Illinois law); <u>Thibodeau v. Comcast Corp.</u>, 912 A.2d 874, 879-86 (Pa. Super. Ct. 2006) (Pennsylvania and Massachusetts law).

[5] According to goPuff's website, it has "200+ micro-fulfillment centers in 500+ cities and more than 3,000 employees." <u>https://gopuff.com/home/about-us</u> (last visited December 23, 2020) (attached hereto as Exhibit A).

Pleas, where goPuff is headquartered, on October 5, 2020. Id.

Defendants filed a Notice of Removal on October 30, 2020, and Plaintiffs filed a Motion to Remand on November 30, 2020. Dkts. 1, 10.[6] Defendants filed their Motion to Compel Arbitration on November 30, 2020. Dkt. 9.

## III.    LEGAL STANDARD

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA specifically exempts from its reach the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; Circuit City, 532 U.S. at 118-19. As explained by the Supreme Court, to qualify for the Section 1 exemption, an individual must work for a business pursuant to (1) a "contract of employment," (2) be a "transportation worker," and (3) be "engaged in interstate commerce."  See Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (citing Circuit City, 532 U.S. at 118). As Defendants point out, notwithstanding the delegation clause in the arbitration provision, the Court, rather than an arbitrator, must resolve the question of whether the transportation worker exemption applies. See Dkt. 9, p. 25; New Prime, Inc. v. Oliveira, 139 S. Ct. 532, 537 (2019).

"Where the issue of whether the residual clause of § 1 of the FAA applies arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue." Gonzalez v. Lyft, Inc., 2020 WL 7183573, *3 (D.N.J. Oct. 13, 2020) (quoting Singh v. Uber Technologies

---

[6] As noted above, the Court should resolve Plaintiffs' Motion to Remand prior to addressing Defendants' Motion to Compel.

<u>Inc.</u>, 939 F.3d 210, 218 (3d Cir. 2019)).[7]

## IV.  ARGUMENT

### A. Plaintiffs are Subject to the FAA's Transportation Worker Exemption

The FAA's transportation worker exemption applies to the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; <u>Circuit City</u>, 532 U.S. at 118-19. As explained by the Supreme Court, to qualify for the Section 1 exemption, an individual must work for a business pursuant to (1) a "contract of employment," (2) be a "transportation worker," and (3) be "engaged in interstate commerce."  <u>See Harden v. Roadway Package Sys., Inc.</u>, 249 F.3d 1137, 1140 (9th Cir. 2001) (citing <u>Circuit City</u>, 532 U.S. at 118). Whether the transportation worker exemption applies to Plaintiffs' work in this case is a question to be resolved by the Court. <u>New Prime</u>, 139 S. Ct. at 537.

There is no dispute that Plaintiffs in this case meet the first two requirements for the transportation worker exemption. With regard to the first criterion, the Supreme Court has recently clarified that even workers classified as "independent contractors" perform work pursuant to "contracts of employment" as that term was understood under Section 1.[8] <u>See New</u>

---

[7] In <u>Singh</u>, the Third Circuit remanded for discovery because it was unclear whether passengers were transporting passengers instrastate was "engaging in interstate commerce". <u>Singh</u>, 939 F.3d at 227 ("The inquiry remains whether Singh belongs to a class of transportation workers engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it."). Unlike in <u>Singh</u>, it should not be necessary for the parties to undergo discovery in order for the Court to decide Defendants' Motion to Compel, since goPuff admits that its activities involve interstate commerce and it admits that Plaintiffs in this case deliver goods which originate in different states. Both parties in this case agree that discovery is not needed for the Court to resolve the motion.

[8] In <u>New Prime</u>, the Supreme Court held that courts need not make a preliminary decision as to whether plaintiffs are employees or independent contractors in order to determine whether they fall under the transportation worker exemption of the FAA.  Instead, the Supreme Court held that

<u>Prime</u>, at 543-44 ("When Congress enacted the Arbitration Act in 1925, the term 'contracts of employment' referred to agreements to perform work. No less than those who came before him, [Plaintiff] is entitled to the benefit of that same understanding today", regardless of his classification.). Nor can there be any dispute that Plaintiffs are "transportation workers" as required by the exemption – the Transportation Services Agreement characterizes Plaintiffs' work as "delivery transportation services". Dkt 9-1, p. 47. [9] As a result, the question to be resolved by the Court is whether Plaintiffs are "engaged in interstate commerce." For the reasons set out below, the answer to this question is a clear "yes".

GoPuff relies on formalistic distinctions and an unduly narrow reading of the transportation worker exemption to the FAA in its bid to compel arbitration. Specifically, goPuff argues that because the deliveries made by Plaintiffs in this case are "local deliveries" (Dkt. 9, p. 12), Plaintiffs are not workers engaged in interstate commerce. However, it is beyond dispute that the products which Plaintiffs deliver originate in other states (and possibly other countries). As Defendants acknowledge, goPuff sells "goods that may be manufactured in various locations across the United States." Dkt. 9, p. 32. Plaintiffs' deliveries are the final part of a continuous chain of interstate movement, through which thousands of consumer and household products from different states make their way to one of hundreds of goPuff warehouses, and from there onward to the homes of goPuff's customers. Nothing in the language of the transportation worker exemption, or in subsequent caselaw indicates a requirement that Plaintiffs physically

the exemption applies to <u>all</u> transportation workers engaged in interstate commerce, regardless of whether they are employees or independent contractors.

[9] While goPuff says that neither Defendant goBrands nor Defendant GB Logistics are "transportation companies" (Dkt. 9 at 32, n. 8), the fact is that both companies work to deliver consumer goods to customers' homes. GB Logistics is wholly owned by goBrands and provides the app-based technology that connects customers to deliveries.

cross state lines.

As explained further below, numerous courts have examined scenarios in which delivery drivers, making intrastate trips, complete the last leg of an interstate journey of goods to customers' homes. These cases are, in all significant respect, identical to the instant case. Much like "last mile" drivers working for Amazon and other delivery companies, Plaintiffs in this case play a key part in the interstate voyage of goods from various origin points across the United States to customers' homes. Plaintiffs are therefore unquestionably exempt under Section 1 of the FAA.

1. **Plaintiffs' Activities are "Within the Flow of Interstate Commerce"**

goPuff attempts to distinguish between its own activities (which it admits involve interstate commerce) and Plaintiffs' activities (which it argues are local in nature). This is a false dichotomy. "If an employer's business is centered around the interstate transport of goods and the employee's job is to transport those goods to their final destination—even if it is the last leg of the journey—that employee falls within the transportation worker exemption." Rittmann v. Amazon.com, Inc., 383 F. Supp. 3d at 1201. "Although our ultimate inquiry is whether a class of workers is 'engaged in ... interstate commerce' . . . [t]he nature of the business for which a class of workers perform their activities must inform that assessment." Waithaka, 966 F.3d at 19. GoPuff's business relies heavily on the interstate movement of goods – as goPuff's website notes, the company has a network of hundreds of warehouses in cities across the country and employs thousands of drivers, connecting much of the United States to its convenient delivery system.[10] Plaintiffs and other delivery drivers are an integral part of goPuff's business model.

---

[10] goPuff currently delivers "to 500 cities. Plus, we're opening new facilities all the time, and are bringing our on-demand delivery service to an area near you soon."

They provide the final link in goPuff's multi-state delivery system: delivering a wide variety of goods from all over the country to consumers' homes. The key question under the transportation worker exemption to the FAA is whether Plaintiffs' activities are closely connected to interstate commerce, thus putting them within the scope of the exemption.[11]

goPuff's assertion that Plaintiffs are not part of a class of workers covered by the transportation worker exemption is at odds with the statutory language of Section 1 and the caselaw interpreting it since the FAA's passage.[12] goPuff argues that Plaintiffs' work is different from that of seamen or railroad employees "whose primary job is to transport good [sic] and passengers across state boundaries" (Dkt. 9, p. 30), yet a big-picture view of Plaintiffs' work makes clear that it centers around the interstate transport of goods.

In interpreting Section 1 of the FAA, the Supreme Court recently noted that "it's a

---

https://gopuff.com/delivery/cities (last visited December 23, 2020) (attached hereto as Exhibit B).

[11] As the court in Rittmann explained, "when deciding whether a particular employee falls within the transportation worker exemption, courts often consider whether a strike by a group of the employees at issue would interrupt interstate commerce . . . a strike by a large group of Plaintiffs and those similarly-situated would interrupt interstate commerce." Rittmann, 383 F. Supp. 3d at 1201. In this case, if Plaintiffs and other similar delivery drivers went on strike, goPuff's nationwide distribution network (as well as those of other similar companies) would cease to operate, and customers would no longer have quick and easy access to a variety of goods.

[12] In 1925, Congress had a broad understanding of who qualified as a railroad employee or seaman and that many of these workers did not cross state lines or travel long distances as part of their job. For example, in cases decided under the Federal Employers Liability Act ("FELA"), the Supreme Court held that workers who performed only intrastate transportation and who never crossed state lines were still covered by the Act. For example, in Philadelphia & R R Co v. Hancock, 253 U.S. 284, 285 (1920), the Court held that even where "[t]he duties of the [train crew member] never took him out of Pennsylvania," and he solely transported coal to a destination two miles away, he was nonetheless engaged in interstate commerce because the coal he was transporting was bound for another state. Just as railroad employees and seamen have a strong nexus with interstate transportation because they often transport or facilitate the intrastate transportation of goods that are "within the flow" of interstate commerce, so too do delivery drivers like the Plaintiffs in this case.

'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary ... meaning ... *at the time Congress enacted the statute*.' New Prime, 139 S. Ct. at 539 (quoting Wisconsin Central Ltd. v. United States, 138 S.Ct. 2067, 2074 (2018)) (emphasis added).  To be "engaged in interstate commerce" at the time of the FAA's passage in 1925 meant generally that one participated in the trafficking of goods or passengers between different states (or countries). Upon the FAA's passage, "interstate commerce" was plainly understood to encompass intrastate transportation of goods that were bound for out-of-state or coming from out-of-state where that work was "so closely related to" interstate transportation "as to be practically a part of it." See Baltimore & O. S. W. R. Co. v. Burtch, 263 U.S. 540, 542, 544 (1924)).

In Circuit City, 532 U.S. at 117, the Supreme Court noted that the phrase "engaged in interstate commerce" as it is used in Section 1 is a "term of art" that commonly means "within the flow of interstate commerce" where it has been used in other statutes such as the Motor Carrier Act, the Fair Labor Standards Act, the Clayton Act, and the Robinson Patman Act. Courts interpreting these statutes have considered a worker's intrastate transportation of goods within the continuous flow of an interstate shipment to qualify as being "engaged in commerce."[13]  Similarly, cases interpreting the FLSA and the MCA, which have likewise assessed whether workers are "engaged in commerce" or "engaged in interstate commerce" have understood delivery drivers who make the last leg of a continuous interstate journey to be

---

[13] See Gulf Oil Corp. v. Copp Paving Co., Inc., 419 U.S. 186, 195 (1974) ("engaged in commerce" denotes "persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer." Under the Clayton Act); United States v. Am. Bldg. Maint. Indus., 422 U.S. 271, 283 (1975) (holding that the phrase "engaged in commerce' as used in § 7 of the Clayton Act means engaged in the flow of interstate commerce").

"engaged in interstate commerce."[14] In other words, the phrase "engaged in interstate commerce"

has historically been read to encompass the intrastate components of a bigger, interstate network.

Moreover, as the Supreme Court recently made clear, the interstate commerce

requirements contained in Sections 1 and 2 of the FAA must be read in relation to each other. If,

as goPuff argues, Plaintiffs' work does not even involve interstate commerce, then the

Transportation Services Agreements goPuff relies on would not even be covered by the FAA,

since Section 2 of the FAA limits the FAA's coverage to contracts related to interstate

commerce.[15] In New Prime, the Supreme Court noted that the "interstate commerce" requirement

in sections 1 and 2 *must be defined in relation to each together.* 139 S. Ct. at 537 ("§1 helps

define § 2's terms"). And in American Postal Workers Union, AFL-CIO v. U.S. Postal Service,

823 F.2d 466 (11th Cir. 1987), the Eleventh Circuit pointed out this interplay between Sections 1

and 2 where it held that postal workers qualified for the Section 1 transportation worker

exemption (despite only making intrastate deliveries) because, if the work did not involve

interstate commerce, then the contracts would not even be covered by the FAA, pursuant to

---

[14] See, e.g., Ehrlich v. Rich Prod. Corp., 767 F. App'x 845, 848 (11th Cir. 2019) ("We conclude that …the RSRs were engaged in interstate commerce when making their deliveries. Although the RSRs transported the products only in Florida, their deliveries were a part of a continuous stream of interstate commerce because there was a practical continuity of movement between the RSRs' deliveries to the retail stores and the overall interstate flow."); Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943) ("The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act."); Merchants Fast Motor Lines, Inc. v. I.C.C., 5 F.3d 911, 917 (5th Cir. 1993) (noting that "continuity of interstate movement is not broken at [a] warehouse when goods intended to move to [their] ultimate destination").

[15] The arbitration provision contained in the Transportation Services Agreements states that it "is governed by the Federal Arbitration Act" and "evidences a transaction involving interstate commerce." Dkt. 9-1, p. 13.

Section 2.[16]  Here, goPuff admits that the transactions involved here involve interstate commerce

(and thus Section 2 is satisfied).[17] Thus, there should be little question that Plaintiffs' work here

has the requisite connection to interstate commerce to make them subject to the FAA's

transportation worker exemption.

**2. Plaintiffs' Deliveries Form Part of a Continuous, Interstate Movement of Goods**

In this case, Plaintiffs' and other delivery drivers' role is to make the last leg of an

interstate journey of products to customers' homes.[18] goPuff's claim that Plaintiffs are not

covered by the transportation worker exemption is neither logical nor supported by any appellate

decision and would contravene Congress's purpose in drafting the exemption, which is to

safeguard the free flow of goods in interstate commerce, including the last (intrastate) leg of their

journey.

---

[16] The court in Rittmann likewise recognized the interplay between Sections 1 and 2: "Amazon insists that the term 'engaged in commerce,' as used in those statutes and as discussed in *Circuit City*, is not akin to the phrase 'engaged in *foreign or interstate* commerce' in § 1 of the FAA . . . That contention is not persuasive." Rittmann, 971 F.3d at 914. "The FAA defines the term 'commerce' as 'commerce among the several States or with foreign nations ...'" Id. (quoting 9 U.S.C. § 1). "We see no way to meaningfully distinguish between the word 'commerce' used in § 2, defined as 'commerce among the several States or with foreign nations,' with the 'foreign or interstate commerce' referenced in § 1." Id. "Congress did not vary *what* it regulated in these provisions, only the reach of its regulation. Id. (citing Circuit City, 532 U.S. at 115, 117–18).

[17] While a number of courts have interpreted interstate commerce in Section 2 as broader than Section 1, the Supreme Court has recently made clear in New Prime that they must be read in relation to each other, and goPuff offers no explanation as to where the dividing line would be between interstate commerce as referred to in Section 2 and that referred to in Section 1.

[18] goPuff's contention that Plaintiffs deliver goods stocked at local warehouses makes no difference in the analysis – once again. goPuff acknowledges that the goods originate from out of state. They are not transformed prior to being delivered to customers. This situation is indistinguishable from the Amazon deliveries in Rittmann and Waithaka, which likewise originate from out of state, and are likewise made out of local warehouses.  This case is also unlike cases involving food delivery, such as Wallace v. Grubhub Holdings, Inc., 970 F.3d 798 (7th Cir. 2020) or Austin v. DoorDash, Inc., 2019 WL 4804781 (D. Mass. Sept. 30, 2019), where the courts held that the transformation of raw food ingredients into meals interrupted their interstate journeys and thus found the drivers not to be engaged in interstate commerce.

goPuff's argument that the consumer goods Plaintiffs deliver are stocked at local warehouses does not alter the analysis. As the Ninth Circuit explained in <u>Rittmann</u>, examining an identical scenario, "[t]he packages are not held at warehouses for later sales to local retailers; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys." <u>Rittmann</u>, 971 F.3d at 916. In this case, goPuff's business model centers on delivering consumer goods directly to a customer's home, and Plaintiffs' local deliveries form an inseparable part of that journey.[19] "The interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations, and thus AmFlex drivers are engaged in the movement of interstate commerce." <u>Id.</u> The same is true in this case – the local delivery to a customer's home

---

[19]  Defendants suggest that this case is distinguishable from the Amazon cases because goPuff, unlike Amazon, does not coordinate the delivery of products across the country. Instead GoBrands stocks "micro-fulfillment centers", and GB Logistics contracts with Plaintiffs for local deliveries from these centers. While the record is not clear yet whether or not this is the case, courts have made clear that a single employer need not coordinate the entire interstate delivery process in order to satisfy the "interstate commerce" requirement. Cases decided under the FELA (and relied on by the court in <u>Rittmann</u>) have made clear that intrastate "first-mile" or "last-mile" transportation constitutes "engagement in interstate commerce" when it represents one leg of a continuous interstate journey, <u>see</u> <u>Philadelphia & R.R. Co. v. Hancock</u>, 253 U.S. 284, 285 (1920), and they also hold that this transportation qualifies as interstate commerce regardless of whether a single company is responsible for the entire interstate journey.  <u>See, e.g.</u>, <u>Kach v. Monessen Sw. Ry. Co.</u>, 151 F.2d 400, 401 (3d Cir. 1945) (local railroad which operated on 7.5 miles of track connecting steel plant to rail lines for larger, interstate railroads was "engaged in interstate commerce" by virtue of receiving interstate shipments and transporting goods to the depot for shipment out of state <u>by different companies</u>). Other courts interpreting the Section 1 exemption have followed this same principle, recognizing that where there is a continuous interstate journey, it is not necessary that the entire journey is administered by a single entity. <u>See</u> <u>Beverage Co., Inc.</u>, 33 Cal. App. 5th 274 (Cal. Ct. App. 2019), <u>reh'g denied</u> (Mar. 27, 2019) (driver for a California alcohol distributor was exempt because alcohol was within the flow of interstate commerce, even though his employer was merely responsible for "receiving" the out-of-state shipments of alcohol, not for the entire interstate shipment); <u>Ward v. Express Messenger Sys., Inc.</u>, 413 F. Supp. 3d 1079, 1081 (D. Colo. 2019) (finding last-mile delivery drivers to be exempt under Section 1, where they contracted with J&B, an intra-state delivery company operating entirely within the state of Colorado, which contracted with larger company OnTrac; continuity of the shipment was not broken simply because the drivers contracted with a different company).

is the final point of the interstate movement of the consumer goods goPuff delivers.

The Rittmann court offers a useful hypothetical: "A distribution center in Northern California receives a shipment of mattresses from New York, some of which are then transported by a long-haul driver to a distribution center in Southern California, others of which are delivered by a short-haul driver to a customer in Southern Oregon." Rittmann, 383 F. Supp. 3d at 1201. In this scenario, "[t]he long-haul truck driver would not be any less subject to the transportation worker exemption than the short-haul truck driver, whose route happens to cross state lines." Id.[20] As the Ninth Circuit noted. "the fact that the phrases 'employed in commerce' or 'engaged in commerce' have not been interpreted to require businesses or employees to cross state lines persuades us that Amazon's unduly restrictive construction of the phrase is unwarranted." Rittmann, 971 F.3d at 913-14. "Commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business." Swift & Co. v. United States, 196 U.S. 375, 398-99 (1905).

The District of New Jersey recently issued a report and recommendation denying Lyft's motion to compel arbitration based on the FAA's transportation worker exemption. See Gonzalez v. Lyft, Inc., 2020 WL 7183573, *5 (D.N.J. Oct. 13, 2020). In examining the reach of the exemption, the Gonzalez court explained: "[w]hile Lyft seems to suggest that the Court must read 'engaged in' to include some minimum threshold level of activity (e.g., the focal point of one's job), the definition it cites is not so limited." Id. at *5. "The statute does not say 'engaged exclusively,' 'engaged primarily,' 'engaged routinely,' or even 'engaged in a lot of' interstate

---

[20] Supreme Court precedent predating the FAA held that shipping goods within a single state still constitutes interstate commerce if the in-state transportation is part of a good's journey from one state to another. See, e.g., Texas & N.O.R. Co. v. Sabine Tram Co., 227 U.S. 111, 123 (1913); R.R. Comm'n of Louisiana v. Texas & P. Ry. Co., 229 U.S. 336, 341 (1913); People of State of New York ex rel. Pennsylvania R. Co. v. Knight, 192 U.S. 21, 26 (1904).

commerce. Congress could have inserted any number of modifiers intended to express a baseline amount of activity necessary to trigger the Section 1 exemption. It did not." Id. This Court should follow Gonzalez and likewise reject an overly narrow reading of the transportation worker exemption.  See also Cunningham v. Lyft, Inc., 450 F. Supp. 3d 37, 46 (D. Mass. 2020) (also finding Lyft drivers to be engaged in interstate commerce and thus exempt from the FAA under the transportation worker exemption).[21]

### 3. There is no Requirement that Plaintiffs Personally Carry Goods Across State Lines

goPuff's contention that a worker must *personally* carry goods across state lines in order to qualify as "workers engaged in foreign or interstate commerce" that fall under the transportation worker exemption contained in 9 U.S.C. § 1 is at odds with the language and history of the statute and has been repeatedly rejected by courts.  As the Third Circuit pointed out, "if Congress intended the residual clause of the exemption to cover only those workers who physically transported goods across state lines, it would have phrased the FAA's language accordingly." Palcko, 372 F.3d at 593-94. At the time of the FAA's passage in 1925, the phrase "engaged in interstate commerce" encompassed intrastate transportation of goods that were traveling into or out of the state, and even work that did not involve the physical transportation of goods at all where that work was "so closely related to" interstate transportation "as to be practically a part of it."

Most recently, the First Circuit made clear that "last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers 'engaged in ... interstate commerce,' *regardless of whether the workers themselves physically cross state lines*."

---

[21] While there is currently disagreement among the courts as to whether rideshare drivers are engaged in interstate commerce, this case is all but identical to the Amazon cases, Rittmann and Waithaka, in which the plaintiff drivers were transporting goods that clearly crossed state lines and were held to be exempt from the FAA under the transportation worker exemption.

<u>Waithaka</u>, 966 F.3d at 26 (emphasis added). In rejecting Amazon's argument that the delivery drivers must themselves travel interstate in order to be subject to the Section 1 exemption, the <u>Waithaka</u> court explained that "construing the [transportation worker] exemption to include workers transporting goods within the flow of interstate commerce advances, rather than undermines, "Congress'[s] demonstrated concern with transportation workers and their necessary role in the free flow of goods." <u>Id.</u> at 24 (citing <u>Circuit City</u>, 532 U.S. at 121).

### 4.   **Numerous Courts have Found "Last Mile" Delivery Drivers to be Transportation Workers Exempt under Section 1 of the FAA**

During the past several years, as online orders and on-demand deliveries have become increasingly common, courts have repeatedly held that "last mile" delivery drivers, who make <u>intra</u>state deliveries of goods that were "within the flow" of <u>inter</u>state commerce as part of a continuous delivery chain, are subject to the transportation worker exemption. <u>See</u> <u>Waithaka</u>, 966 F.3d 10 (Amazon delivery drivers are transportation workers exempt under Section 1 of the FAA); <u>Rittmann</u>, 971 F.3d at 915 (9th Cir. 2020) ("In light of our construction of the statute and consideration of the record, we conclude that AmFlex delivery providers belong to a class of workers engaged in interstate commerce that falls within § 1's exemption."); <u>Hamrick, et al. v. US Pack Holdings, LLC, et al.</u>, No. 6:19-cv-137, Dkt. 88 at 4 (M.D. Fla. August 15, 2019) (holding that delivery drivers who "predominately make local deliveries and rarely cross state lines in the ordinary course of their employment" were exempt under Section 1); <u>Ward</u>, 413 F. Supp. 3d at 1085 (D. Colo. 2019) (<u>intra</u>state "last-mile" delivery driver found to be exempt under Section 1); <u>Nieto</u>, 33 Cal. App. 5th at 281-85 (deliveries of products purchased from national and international companies, "although intrastate, were essentially the last phase of a continuous journey of the interstate commerce ... being transported until reaching its destination[ ] to [the company's] customers."); <u>Muller v. Roy Miller Freight Lines, LLC</u>, 246 Cal. Rptr. 3d 748, 751

(Ct. App. 2019) (truck driver whose "trips were entirely within California" and who "never transported freight across state lines" was nonetheless exempt under Section 1); Christie v. Loomis Armored US, Inc., 2011 WL 6152979 (D. Colo. Dec. 9, 2011) (intrastate currency delivery driver found to be exempt under Section 1).

Cases like Waithaka, Rittman, Hamrick and Express Messenger provide the most apt analogies for this case. In each of these cases, while the plaintiffs worked out of a single warehouse in a certain state, and made their delivery trips within state lines, the courts found that their work was closely connected to interstate commerce, and, as such, they were subject to the transportation worker exemption. As the First Circuit explained in Waithaka, "[b]y virtue of their work transporting goods or people 'within the flow of interstate commerce,' Waithaka and other AmFlex workers are 'a class of workers engaged in ... interstate commerce.'" 966 F.3d at 26 (citing Circuit City, 532 U.S. at 118). As the Ninth Circuit explained in Rittmann, "AmFlex workers pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination." 971 F.3d at 915. As a result, "[a]lthough Amazon contends that AmFlex delivery providers are 'engaged in local, intrastate activities,' the Amazon packages they carry are goods that remain in the stream of interstate commerce until they are delivered." Id. The same analysis applies to the work of Plaintiffs in this case, who deliver consumer products from different states on the last leg of their journey to customers' homes.

In fact, federal courts of appeal have applied the transportation worker exemption in cases involving far more tenuous connections to interstate commerce then in this case. For example, in Palcko, the Third Circuit found that a plaintiff who merely *supervised* drivers

making intrastate deliveries in the Philadelphia area[22] was exempt under Section 1. 372 F.3d at 593-94. In Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988), the Sixth Circuit found that a postal worker was subject to the transportation worker exemption, reasoning that "[i]f any class of workers is engaged in interstate commerce, it is postal workers" since "[t]hey are responsible for dozens, if not hundreds, of items of mail moving in 'interstate commerce' on a daily basis. Indeed, without them, 'interstate commerce,' as we know it today, would scarcely be possible." (quoting American Postal Workers Union v. United States Postal Service, 823 F.2d 466, 473 (11th Cir.1987)).

The cases relied upon by goPuff can be easily distinguished from the facts of the instant case. For example, in Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1289 (11th Cir. 2005), the Eleventh Circuit held that an account manager for a rent-to-own business who occasionally made out-of-state deliveries was not part of a class of workers in the transportation industry for purposes of the § 1 exemption. The Hill court relied heavily on the fact that the plaintiff's job as an "account manager" did not fall within a class of transportation workers like Plaintiffs do here as delivery drivers. Id. at 1290. Moreover, Hill predated the recent circuit court decisions in Waithaka and Rittmann that specifically address the application to delivery drivers.

The food delivery cases goPuff relies upon are likewise distinguishable. As the Ninth Circuit in Rittmann notes, "prepared meals from local restaurants are not a type of good that are 'indisputably part of the stream of commerce'" compared to the consumer goods that Plaintiffs delivered. 971 F.3d at 916. Cases involving food delivery have found that there is an interruption of the flow of commerce where raw food ingredients are transformed into meals.

[22] As a district court recently noted, "[t]he plaintiff in Palcko was arguably even less involved in the interstate transposition of goods as a supervising manager, yet the Third Circuit still held that she was sufficiently engaged in interstate commerce." Easterday v. USPack Logistics, No. 1:15-cv-07559, Dkt. 227, 15 (D.N.J. Dec. 4, 2020).

But in this case, the consumer goods – paper towels, cough drops, etc… - arrive from out-of-state to a goPuff warehouse. Plaintiffs take these goods, unaltered, and deliver them to customers' homes. As the <u>Rittmann</u> court explained, "AmFlex workers complete the delivery of goods that Amazon ships across state lines and for which Amazon hires AmFlex workers to complete the delivery. AmFlex workers form a part of the channels of interstate commerce, and are thus engaged in interstate commerce as we understand that term." <u>Id.</u> at 917. The same analysis applies here.

## B. Because the FAA Does not Apply, the Arbitration Provisions are Unenforceable

Acknowledging that the Court may find Plaintiffs exempt under Section 1 of the FAA, goPuff argues that Delaware or Pennsylvania law should apply to the arbitration agreements in lieu of the FAA to still compel arbitration. However, the language of the Technology Services Agreements and the arbitration provision contained therein makes clear that (1) the arbitration provision is subject to the FAA; and (2) the Delaware choice of law provision contained in the Technology Services agreement does *not* apply to the arbitration provision. <u>See</u> Dkt. 9-1, p. 15. goPuff acknowledges these two provisions, yet argues that a state law should apply in the event Plaintiffs are found to be exempt under the FAA.

In <u>Rittmann</u>, the court faced an all but identical set of provisions: an arbitration provision governed by the FAA and a Washington choice of law provision that explicitly carved out the arbitration provision from its reach. <u>See</u> 383 F. Supp. 3d at 1203. The Ninth Circuit explained that "[b]ecause we must give effect to the parties' contract as written, the FAA does not apply because the arbitration provision is still subject to the transportation worker exemption in § 1." <u>Id.</u> at 919. The court declined defendant's invitation to apply Washington state law to the dispute based on the choice of law provision, explaining that "[w]ere we to sever the choice-of-

FAA clause, the governing law provision would state that the TOS is 'governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement.' In that case, the plain language of the contract would prohibit applying Washington law to the arbitration provision." Id. at 920. The court also rejected defendant's argument based on a choice-of-law analysis, noting that "we cannot sever the clause that applies Washington law to the contract 'except for Section 11' from the governing law provision without impermissibly rewriting the contract. Amazon cites no authority that would allow us to conclude that the presumption in favor of local law overcomes express contractual language that precludes its application." Id. at 920-21. The court concluded that "[b]ecause there is no law that governs the arbitration provision, we agree with the district court that there is no valid arbitration agreement." Id. at 921; see also Hamrick, No. 6:19-cv-137, Dkt. 88 at *5 (holding that where "the Arbitration Provision itself specifically elects to apply the FAA[,]…the more specific provision controls, [and] the Arbitration Provision cannot be interpreted pursuant to applicable state law and must rise or fall on the application of the FAA.").

The reasoning used by the Ninth Circuit in Rittmann applies in this case as well. GoPuff first argues that, if Plaintiffs are found to be exempt under Section 1, the Court should analyze its Motion to Compel Arbitration under Delaware law. Yet the plain text of the agreements goPuff relies on states that "[t]he choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the Federal Arbitration Act." Dkt. 9-1, p. 15. Thus, the language of the contract makes clear that only the FAA, and **not** Delaware law, governs the arbitration provision. The court should reject goPuff's invitation to rewrite the contract to apply Delaware law.

Nor is there a basis for the Court to apply Pennsylvania law in lieu of the FAA as goPuff

suggests. Although Pennsylvania (the principal place of business for goPuff and the state in which this Court is located) arguably has more of a connection to this dispute than Delaware (the place of incorporation for GB Logistics, Inc.), the Technology Service Agreements could not be clearer that only the FAA governs the arbitration provision. The Court is not free to write in a different state law to apply in lieu of the FAA.[23]

## V.     CONCLUSION

For these reasons, Defendants' Motion to Compel must be denied in its entirety.[24]

Date:  December 23, 2020                    Respectfully submitted,

/s/ Olena Savytska
Shannon Liss-Riordan (admitted *pro hac vice*)
Olena Savytska (admitted *pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Phone:  (617) 994-5800

---

[23] Nor would application of Pennsylvania law result in an automatic win for the Defendants. "Under Pennsylvania law, class action waivers are substantively unconscionable where 'class action litigation is the only effective remedy' such as when 'the high cost of arbitration compared with the minimal potential value of individual damages denie[s] every plaintiff a meaningful remedy.'" Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 232 (3d Cir. 2012) (quoting Thibodeau, 912 A.2d at 883-84). Each of the delivery drivers' individual damages in this case are small compared to the costs of pursing an individual arbitration. As a result, examination of the arbitration provision and its class action waiver under Pennsylvania law would likely reveal it to be unconscionable.

[24] In the event the Court does not find that that Plaintiffs are exempt under Section 1 of the FAA and finds the arbitration clause enforceable, the Court should dismiss the case, rather than stay it, which would allow Plaintiffs to pursue an appeal. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 87 n.2 (2000).

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone: (215) 884-2491

*Counsel for Plaintiffs*

**DECLARATION OF SERVICE**: I declare that this document is being sent to the following lawyers today via the Court's ECF system:

Cathleen M. Devlin, Esq.
Albert F. Moran, Esq.
Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Date: December 23, 2020
<u>/s/ Olena Savytska</u>
Olena Savytska (admitted *pro hac vice*)