## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN NELSON, et al.,                          :
     Plaintiffs,                              :          No. 20-cv-5424-JMY
                                 :
     v.                                       :
                                 :
GOBRANDS, INC., et al.,                         :
     Defendants.                              :

## MEMORANDUM

**YOUNGE, J.**                                                    **September 20, 2021**

Plaintiffs, Kevin and Aura Nelson, bring this class action lawsuit against Defendants, Gobrands, Inc. and GB Logistics, LLC (hereinafter Defendants), seeking monetary damages under the Illinois Wage Payment and Collection Act ("IWPCA"), 620 ILCS 115/1, *et. seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et. seq.*[1]  (Compl., ECF No. 1-1 ¶¶ 32-43 (Count I and Count II).)  Pending before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings.  ("Mot.," ECF No. 9.)  The Court finds the matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Defendants' Motion will be granted.

## I.      BACKGROUND

### A.      Facts

Plaintiffs are local delivery drivers who purport to represent two classes of individuals who work as local delivery drivers for Defendants in the state of Illinois (hereinafter "Delivery Drivers").  (Compl. ¶¶ 23-26.)  Defendants operate a business that delivers consumer goods, food and other products directly to its customers from warehouses and/or micro-filling centers located throughout the geographic region of Illinois.  (*Id.* ¶¶ 7-8.)  To that end, Plaintiffs aver that Defendants maintain a series of warehouses and filling centers in Illinois where they store

various consumer goods, food and products that are directly delivered to customers in and around Illinois.  (*Id.* ¶ 8.)

Plaintiffs allege that Defendants mischaracterized them as independent contractors, and, therefore, failed to reimburse them for business expenses in violation of the IWPCA.  (*Id.* ¶¶ 32-37.)  Specifically, Plaintiffs assert that they used their own personal vehicles to make deliveries for the Defendants by transporting products from the Defendants' warehouses to customers located in the geographic region of Illinois.  (*Id.* ¶ 15.)  In connection with these deliveries, Plaintiffs claim to have regularly incurred unreimbursed expenses including: "expenses related to the acquisition, cost and maintenance of their mobile phone device and wireless data plan; in addition, to vehicle maintenance, gas and insurance."  (*Id.* ¶ 16.)

In addition to their claim under IWPCA, Plaintiffs also allege that Defendants violated the IMWL by failing to pay overtime for hours worked in excess of 40 hours a week based on Defendants' alleged mischaracterization of their employment status as independent contractors. (*Id.* ¶¶ 38-43.)  Plaintiffs assert that "Delivery Drivers regularly work over 40 hours per week. For example, Plaintiff, Aura Nelson, alleges that she typically worked 65-80 hours a week including days lasting approximately 12 to 16 hours."  (*Id.* ¶ 20.)  "However, Defendants did not pay Plaintiffs and other Delivery Drivers any extra overtime premium compensation for their overtime hours."  (*Id.* ¶ 22.)

As previously stated, Plaintiffs bring this case as a putative class action seeking to represent two classes of Delivery Drivers based on dual theories that Defendants violated both the IWPCA and IMWL.  First, "Plaintiffs bring their claim under the IWPCA as a class action on behalf of themselves and all individuals who worked as Delivery Drivers for Defendants at any time between October 5, 2010 and the present in the State of Illinois ("IWPCA Class").  (*Id.* ¶

23.)  Second, "Plaintiffs bring their claim under the IMWL as a class action on behalf of themselves and all individuals who worked as Delivery Drivers for Defendants at any time between October 5, 2017 and the present in the State of Illinois ("IMWL Class").  (*Id.* ¶ 24.)

The employment relationship between the Parties is governed by a written contract that they refer to as the Technology Services Agreement.  ("Technology Services Agreement," ECF No. 9-1.)  Plaintiffs entered into the Technology Services Agreement with Defendant, GB Logistics, LLC, prior to preforming services for Defendants, and the Arbitration Provision found therein contains specific language that makes its terms appliable to Defendant, Gobrands, Inc., as an affiliated and interrelated company.  (*Id.* § 15.3.i.)

The Technology Services Agreement contains an Arbitration Provision which states in relevant part:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .  Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that would otherwise be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration.  Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.

(Technology Services Agreement § 15.3.i. (hereinafter "Arbitration Provision").)  The Arbitration Provision includes a Class Action Waiver clause which reads:

> You and the Company agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver"). The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis. . . .

(*Id.* § 15.3.v (hereinafter "Class Action Waiver").)  The first page of the Technology Services

Agreement also includes an opt-out provision which calls attention to the Arbitration Provision

along with the Class Action Waiver, and it specifically explains that Plaintiffs can opt-out of the

Arbitration Provision:

> IMPORTANT: PLEASE NOTE THAT TO USE THE GOPUFF SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.

(*Id.* at 1 (capitalization in original).)  The Technology Services Agreement also contains a

Choice-of-Law Provision that reads:

> The choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.3, such arbitration clause being governed by the [FAA]. Accordingly, and except as otherwise stated in Section 15.3, the interpretation of this Agreement shall be governed by Delaware law, without regard to the choice or conflicts of law provisions of any jurisdiction. Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the goPuff Services that are not subject to the arbitration clause contained in Section 15.3 shall be subject to the exclusive jurisdiction of the state and federal courts located in . . . Philadelphia, Pennsylvania. These provisions, and except as otherwise provided in Section 15.3, are only intended to specify the use of Delaware law to interpret this Agreement and the forum for dispute asserting a breach of this Agreement, and these provisions shall not be interpreted as generally extending Delaware law to you if you do not otherwise reside or provide services in Delaware. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 15.3 or to any arbitrable disputes as defined therein. Instead, as described in Section 15.3, the [FAA] shall apply to such disputes. The failure of Company to enforce any right or provision in this

> Agreement shall not constitute a waiver of such right or provision unless
> acknowledged and agreed to by Company in writing.

(*Id.* § 15.1 (Choice-of-Law Provision).)  The Technology Services Agreement contains a

severability clause (*Id.* § 14.3), and the Arbitration Provision contains a separate severability

clause.  (*Id.* § 15.3.ix.)  The severability clause in the Arbitration Provision specifically states:

> This Arbitration Provision is the full and complete agreement relating to the formal
> resolution of disputes arising out of this Agreement.  Except as stated in subsection
> V, above, in the event any portion of this Arbitration Provision is deemed
> unenforceable, the remainder of this Arbitration Provision will be enforceable.

(*Id.* § 15.3.ix.)

## B.    Procedural History

Plaintiffs filed this action in the Philadelphia County Court of Common Pleas.  *Nelson v.

Gobrands, Inc.*, No. 0217 (C.P. Philadelphia October 5, 2020) (Complaint).  Defendants then

filed a Notice of Removal in the Eastern District of Pennsylvania.  (ECF No. 1.)  Plaintiffs filed a

Motion to Remand the action to state court (Motion to Remand, ECF No. 10), and Defendants

filed an Opposition to the Motion to Remand.  (Opposition to Motion to Remand, ECF No. 26.)

The Court denied Plaintiffs' Motion to Remand without oral argument (Memorandum and Order;

ECF No. 29-30), and it will now address Defendants' Motion to Compel Arbitration.

## II.    LEGAL STANDARD

In deciding whether a valid arbitration agreement exists between the parties, the Court

must first decide whether to apply Federal Rule of Civil Procedure 12(b)(6) or the Rule 56

standard of review.  *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir.

2015).  The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard

"when it is apparent, based on 'the face of a complaint, and documents relied upon in the

complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause . . .'"

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted); *see also Richards v. Am. Acad. Health Sys., LLC*, Civ. No. 20-00059, 2020 U.S. Dist. LEXIS 90183, at *8 (E.D. Pa. May 22, 2020).  Conversely, the Rule 56 standard will apply "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did."  *Guidotti*, 716 F.3d at 774 (internal citations omitted).

Here, there is no dispute that the Technology Services Agreement contains the Arbitration Provision and that Plaintiffs entered into the agreement with Defendants. (Opposition to Motion to Compel ("Opp.") at 1 n.1, ECF No. 15.)  Thus, in this Court's view, the arbitrability of Plaintiffs' claims are apparent on the face of the Complaint because the Complaint here contemplates the nature of the relationship between Plaintiffs and Defendants that was entered into by virtue of the Technology Service Agreement—in other words, the Technology Services Agreement is integral to the Complaint.  *See Saechow v. Phila. Acad. Health Sys., LLC*, No. 19-2075, 2021 U.S. Dist. LEXIS 62424, at *22 (E.D. Pa. Mar. 31, 2021) ("[A]n arbitration agreement need not be attached to the complaint in order to be 'apparent.'"); *see also Lawson v. City of Phila.*, No. 18-1912, 2019 U.S. Dist. LEXIS 30010, at *5 (E.D. Pa. Feb. 25, 2019) ("An arbitration clause may be deemed 'apparent' even when a contract, though not appended to the Complaint, is integral to, and referenced in, the Complaint.") (internal quotation marks and citation omitted).  Although Plaintiffs argue that the Arbitration Provision is unconscionable and therefore unenforceable, the Court has concluded that the Arbitration Provision is not unconscionable and instead is a valid and enforceable arbitration agreement

under Pennsylvania law. Accordingly, Plaintiffs have failed to set forth reliable, additional evidence sufficient to place the Arbitration Provision at issue.[2]

To conclude, because arbitrability is apparent on the face of the Complaint and because Plaintiffs have not responded to the Motion with additional reliable facts sufficient to place the Arbitration Provision in issue, the Court will review the Motion under the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6). Under this standard, the Court accepts as true all factual allegations in the Complaint and its supporting documents. *See Guidotti*, 716 F.3d at 776; *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (in applying the 12(b)(6) standard to a motion to compel arbitration, the court "accept[s] as true the factual allegations set forth in the Complaint" and may "consider the substance of the contracts that ostensibly compel arbitration.").

## III.   DISCUSSION

### A.   Plaintiffs' Status Under the Transportation Worker Exemption of the FAA Does Not Need to Be Resolved Because the Arbitration Provision Should be Enforced Under State Law

The FAA contains specific language that creates what is known as the Transportation Worker Exemption which explicitly exempts from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Under the Transportation Worker Exemption, the FAA does not apply to contracts of employment for seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce. *Id.* A transportation worker, for the purpose of the FAA exemption, is defined as only those "classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594 (3d Cir. 2004)

(quoting *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 452 (1953)); *see also Singh v. Uber Techs, Inc.*, 939 F.3d 210, 227-228 (3d Cir. 2019) (noting that on remand, the district court might consider information regarding both "the industry in which the class of workers is engaged" and "the work performed by those workers," among other factors, to determine whether a group of workers is "engaged in interstate commerce" and thus exempt from the FAA).

The Parties dispute whether the Plaintiffs are engaged in interstate commerce within the meaning of the Transportation Worker Exemption of the FAA.  9 U.S.C. § 1.  Plaintiffs argue that arbitration should not be compelled because they are transportation workers who engage in interstate commerce within the meaning of the Transportation Worker Exemption.  (Opp. at 8, 12, 13, 15.)  To summarize in the most concise form, Plaintiffs argue that Defendants' business focuses on interstate commerce by selling goods that were manufactured at various locations and that Defendants then place these goods in the stream of interstate commerce by selling directly to customers across the United States.  (*Id.*)  Plaintiffs theorize that they too engage in interstate commerce by delivering these goods on the last-leg of this interstate journey to customers located in Illinois.  (*Id.*)  From their prospective, Plaintiffs are the last-mile delivery drivers who form an integral part of the stream of interstate commerce by carrying goods that are on a continuous journey until they reach the end-user or customer despite the fact that Plaintiffs themselves do not cross state lines when making these deliveries.  (*Id.*)

Defendants, on the other hand, argue that Plaintiffs do not engage in interstate commerce because Plaintiffs are local delivery drivers who do not leave Illinois to pick up goods or when making deliveries.  (Mot. at 20, 22-23.)  They argue that the goods delivered by Plaintiffs are held in micro-fulfillment centers (warehouses) located in the state of Illinois where any interstate

journey that they might have traveled comes to an end because the goods come to rest.  (*Id.*)

Defendants further argue that purchases made by customers are packaged and filled at the micro-

fulfillment centers where they are then picked-up by Plaintiffs and other local Delivery Drivers

who never leave Illinois when making delivers.[3]  (Defendants' Reply at 5, ECF 21.)

      Notwithstanding the Transportation Worker Exemption, when state law grounds exist

that would permit the enforcement of an arbitration provision then an analysis under the FAA is

unnecessary.  *Adams v. Parts Distrib. Xpress, Inc.*, No. 20-cv-0697, 2021 U.S. Dist. LEXIS

52822, *8-9 (E.D. Pa. Mar. 22, 2021) (notice of appeal filed in Third Circuit Court of Appeals at

No. 21-1634 on April 30, 2021); *Kauffman v. U-Haul Int'l. Inc.*, No. 16-cv-4580, 2018 U.S. Dist.

LEXIS 145717, *10 (E.D. Pa. Aug. 28, 2018) (declining to decide whether the FAA's

Transportation Worker Exemption was applicable because even it if was, the arbitration

agreement was nevertheless enforceable under Pennsylvania law).  As will be discussed in more

detail below, the Arbitration Provision at issue in this instance is enforceable under Pennsylvania

state law and the Pennsylvania Uniform Arbitration Act ("PUA"), 42 Pa. C.S. § 7301.  (See § B

hereinbelow.)  Therefore, the Court does not need to wade into the murky debate between the

Parties surrounding Plaintiffs' status under the Transportation Worker Exemption.

**B.**    **The Arbitration Provision in the Technology Services Agreement is Enforceable under Pennsylvania Law**

      Plaintiffs advance two separate arguments in support of their theory that the Arbitration

Provision is invalid under Pennsylvania or Illinois law.  First, Plaintiffs contend that the

Arbitration Provision cannot be analyzed under state law because it explicitly states that it will

be governed by the FAA.  (Opp. at 19.)  Plaintiffs point to language in the Choice-of-Law

Provision in the Technology Services Agreement which explicitly states that Delaware law will

be inapplicable to the Arbitration Provision and that only the FAA will apply to the Arbitration

Provision.  (Technology Services Agreement § 15.1.)  Second, Plaintiffs argue that the Arbitration Provision is invalid because the Class Action Waiver is against public policy and unconscionable; therefore, Plaintiffs believe the entire agreement to arbitrate is invalid under either Pennsylvania or Illinois law.  (Opp. at 4 n.4; *see also id.* at 21 n.23.)  The Court finds both arguments unpersuasive and finds that Pennsylvania law applies.

The parties dispute whether the Arbitration Provision should be evaluated under either Pennsylvania or Illinois law.[4]  (Opp. at 4 n.4; *see also id.* at 21 n.23.)  However, Plaintiffs provide no conflict-of-law analysis to establish that the evaluation of the Arbitration Provision would result in a different outcome under Illinois law rather than Pennsylvania law.[5]  (*See generally* Opp.)  As will be explained in more detail below, both Pennsylvania and Illinois apply a similar method when evaluating agreements to submit claims to arbitration.  Therefore, no actual conflict exists between Pennsylvania and Illinois law, so the Court will apply Pennsylvania law.

The Illinois Legislature enacted the Uniform Arbitration Act ("UAA"), 710 Ill. Comp. Stat. 5/1, *et seq.*, to govern arbitration agreements.  Parties are bound to arbitrate those issues that they have agreed to arbitrate under the terms of the UAA.  *Smola v. Greenleaf Orthopedic Assocs*, 982 N.E.2d 936, 940 (Ill. App. Ct. Dec 27, 2012).  Illinois state courts evaluate arbitration agreements under the same standards as any other contract.  *Vassilkovska v. Woodfield Nissan, Inc*., 830 N.E.2d 619, 623 (Ill. App. Ct. May 24, 2005); *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 107 (Ill. March 23, 2006).  The elements of an enforceable contract include offer, acceptance and consideration.  *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 689 (Ill. App. Ct. Aug 20, 2010).  Consideration is a bargained for exchange where one party receives a benefit or the other party suffers a detriment.  *Id.*  When assessing the

enforceability and validity of contractual provisions, courts located in Illinois evaluate public policy considerations and will also evaluate substantive and procedural unconscionability. *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622-623 (Ill. Feb. 2, 2006); *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. April 21, 2011); 810 Ill. Comp. Stat. 5/2-302.

Likewise, the Pennsylvania Legislature enacted the Pennsylvania Uniform Arbitration Act ("PUAA") to govern arbitration agreements. 42 Pa. C.S. § 7301, *et seq*. Just as in Illinois, an agreement to arbitrate claims is a matter of contract under Pennsylvania law. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (stating that "[b]ecause arbitration is a matter of contract . . . [t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts."). Under Pennsylvania law, a valid contract requires: (1) a mutual manifestation of intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Cardinale v. R.E. Gas Dev., LLC*, 74 A.3d 136, 140 (Pa. Super. 2013) (*citing Johnston the Florist, Inc. v. Tedco Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995); *see also Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Thus, before compelling arbitration, a court must determine two threshold issues: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute falls within the scope of the arbitration agreement. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 756 (3d Cir. 2016); *David v. Ctr. Mgmt. Grp.*, 192 A.3d 173, 180 (Pa. Super. 2018).

Courts located in Pennsylvania will evaluate public policy considerations when resolving disputes involving interpretation of contractual provisions. With some minor variation from Illinois law, Pennsylvania law also recognizes the theory of substantive and procedural unconscionability when interpreting and resolving disputes about contractual provisions. *Gay v.*

11

*CreditInform*, 511 F.3d 369, 392 (3d Cir. 2008) (for a contract to be unconscionable under Pennsylvania law, it must be both procedurally and substantively unconscionable); *Quillon v. Tenet Health System Philadelphia, Inc.*, 637 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 592 Pa. 323 (Pa. 2007), for the proposition that the Pennsylvania Supreme Court has indicated that it might be appropriate to use a "sliding-scale approach" so that "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required" and vice-versa).

       1.     **Reference to the Federal Arbitration Act in the Technology Services Agreement and the Arbitration Clause**

The fact that the Arbitration Provision explicitly states that it is governed by the FAA does not invalidate the entire agreement even if Plaintiffs are found to qualify under the Transportation Worker Exemption. *Kauffman*, at *10-11 (holding that an arbitration clause can be enforced under state law even in the absence of a state law contingency provision). Courts located in Pennsylvania and Illinois have addressed this issue and have found state law applicable even though the arbitration clause at issue contained specific language that adopted the FAA as governing law. *Adams*, at *12; *Atwood v. Rent-A-Ctr. E. Inc.*, No. 15-1023, 2016 U.S. Dist. LEXIS 63478, at *8 (S.D. Ill. May 13, 2016); *see also Arafa v. Health Express Corp.*, 233 A.3d 495, 507 n.2 (N.J. 2020) (applying New Jersey law and rejecting "the proposition that the inapplicability of the FAA must vitiate the entire agreement to arbitrate"). The severability provisions in the Technology Services Agreement and Arbitration Provision corroborates this conclusion by maintaining that if any portion of the agreement is found to be unenforceable, then the remainder shall continue to be "effective and/or may be modified by a court." (Technology Services Agreement § 14.3 & 15.3.ix.)

The fact that the Choice-of-Law Provision contains a carveout which exempts the Arbitration Provision from its selection of Delaware law does not change the Court's analysis under state law.  A plain reading of the carveout in the Choice-of-Law Provision simply means that Delaware law will not apply to the agreement to arbitration claims.  Nothing suggests that the rejection of Delaware law should preclude the Court from determining that the Arbitration Provision is governed by either Pennsylvania or Illinois law.[6]

### 2.      The Class Action Waiver is Not Voidable Based on Public Policy or Unconscionable and, therefore, Unenforceable under Pennsylvania Law

Plaintiffs argue that the cost of individual arbitration will exceed the projected damage award which will make individual arbitration financially impractical; therefore, they argue that the arbitration clause should be set aside.  (Opp. at 21 n.23.)  In support of this proposition, Plaintiffs cite to *Quilloin* which is a case that involved an employment contract that contained an arbitration agreement along with a class action waiver.  (*Id.* (citing *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 232 (3d Cir. 2012).)  In *Quilloin*, the Third Circuit held that the district court erred in applying Pennsylvania law to deny the defendant's motion to compel arbitration because the FAA had preempted the area of Pennsylvania law.  *Id.* at 233-234.  In dicta, the Third Circuit described the current state of Pennsylvania law: "Pennsylvania law does not render class action waivers *per se* unconscionable.  Rather, Pennsylvania finds such waivers substantively unconscionable where 'class action litigation is the only effective remedy' such as when 'the high cost of arbitration compared with the minimal potential value of individual damages denie[s] every plaintiff a meaningful remedy.'"  *Id.* at 233.

Plaintiffs also cite to *Thibodeua v. Comcast Corp.*, 912 A.2d 874, 877 (Pa. Super. 2006), which is a consumer class action case that was brought against a cable television provider.  In *Thibodeau*, each plaintiff alleged damages in the amount of $9.60 per month in overcharges for

services.  *Id.* at 885.  The Superior Court in *Thidodeua* reviewed an arbitration clause that

included a class action waiver and found the class action waiver was an unconscionable contract

of adhesion that violated public policy.  Critical to the holding of *Thibodeua* was the concept that

any potential damage award would be so minimal as to effectively prevent the plaintiffs from

asserting their rights in an individual capacity.  The Superior Court adopted and quoted the logic

applied by the trial court when denying the defendant's preliminary objection:

> If the mandatory individual arbitration and preclusion of class action provisions are
> valid, Comcast [is] immunized from the challenges brought by [] Mr. Thibodeau,
> brought by any class member, or effectively from any minor consumer claims.  It
> is clearly contrary to public policy to immunize large corporations from liability by
> allowing them to preclude all class action litigation or [] arbitration.  The preclusion
> of class wide litigation or class wide arbitration of consumer claims, imposed in a
> contract of adhesion, is unconscionable and unenforceable.

*Id.* at 886.

The Court finds that the Class Action Waiver is not invalid based on principles of public

policy or theories of procedural or substantive unconscionability.  First, from a public policy

stand point, Pennsylvania recognizes and enforces class action waivers in arbitration agreements.

*Kubischta v. Schlumberger Tech Corp.*, No. 15-1338, 2016 U.S. Dist. LEXIS 91556, *2 (W.D.

Pa. July 14, 2016).  Second, a contractual provision under Pennsylvania law may be found

invalid when the moving party establishes procedural and substantive unconscionability.  *Gay v.*

*CreditInform*, 511 F.3d 369, 392 (3d Cir. 2008) (for a contract to be unconscionable under

Pennsylvania law, it must be both procedurally and substantively unconscionable); *Quilloin*, 637

F.3d at 230 (applying a sliding scale approach to evaluate both procedural and substantive

unconscionability).

The Class Action Waiver at issue in this matter cannot be said to be procedurally

unconscionable because the Technology Services Agreement contained an opt-out provision that

14

clearly identified the Class Action Waiver and specifically provided Plaintiffs with an opportunity to opt-out of terms of the Arbitration Provision.[7]  (Technology Services Agreement at 1.)  Plaintiffs did not exercise their right to opt-out of the Arbitration Provision, and they present no evidence or argument to establish that they were not provided with a meaningful opportunity to opt-out.  (*See generally* Opp.)

Plaintiffs also fail to present evidence or argument to establish substantive unconscionability.[8]  (*Id.*)  In their Opposition Brief, they present no estimates to establish the relative cost of arbitration in comparison to the cost of litigation or the potential individual recovery of each Plaintiff.  Furthermore, Plaintiffs explicitly waived the right to conduct discovery on this issue when they wrote, "[B]oth parties in this case agree that discovery is not needed for the Court to resolve this motion."  (Opp. at 6 n.7.)  Plaintiffs in this matter seek damages for overtime hours worked in excess of forty hours a week and unreimbursed expenses for vehicle maintenance, gas, insurance, mobile phone devices and wireless data plans.  (Compl. ¶¶ 16, 43.)  After taking into account the ability to collect attorneys' fees and treble damages under the IWPCA and the IMWL, Plaintiffs potential damage recovery could easily justify resolution by individual arbitration.  *Cronin v. Citifinancial Servs.*, 352 F. App'x 630, 636 (3d. Cir. 2009) (enforcing a class action waiver under Pennsylvania law where the ability to seek actual and punitive damages along with attorneys' fees and costs rendered claims sufficiently valuable to justify individual arbitration).

Courts located in Pennsylvania have repeatedly held that arbitration agreements in employment contracts do not violate public policy and are not substantively or procedurally unconscionable contracts of adhesion.  *Smaller v. JRK Residential Mgmt. Corp.*, No. 16-cv-2066, 2017 U.S. Dist. LEXIS 21158, *3 (E.D. Pa. Feb. 15, 2017); *Keller v. Pfizer, Inc.*, No. 17-cv-

1883, 2018 U.S. Dist. LEXIS 191174, *6 n.1 (M.D. Pa. Nov. 8, 2018); *Alexander v. Raymours Furniture Co.*, No. 13-cv-5387, 2014 U.S. Dist. LEXIS 111962, *17 (E.D. Pa. Aug 13, 2014); *Wetzel v. Baldwin Hardware Corp.*, No. 98-CV-3257, 1999 U.S. Dist. LEXIS 1227, *1 (E.D. Pa. Jan 29, 1999) (granting a motion to compel arbitration where an employee received and had notice of a mandatory arbitration agreement, even though the employee did not sign the agreement).

**C.     Defendants' Motion to Stay Proceedings will be Granted**

Applying Pennsylvania law, this action will be stayed and placed in civil suspense pending completion of arbitration proceedings.  *See* 42 Pa. C.S. § 7304(d); *see also Morse v. Fisher Asset Mgmt., LLC*, 206 A.3d 521, 527 (Pa. Super. March 15, 2019).

**IV.     CONCLUSION**

For the above stated reasons, the Defendants' Motion to Compel Arbitration will be granted, and an appropriate order shall be entered.

BY THE COURT:

    /s/ John Milton Younge
Judge John Milton Younge

---

[1] Plaintiffs have not yet filed their motion for class certification; therefore, the Court has not yet certified this action for class action status.

[2] Plaintiffs did not request discovery regarding the validity of the Arbitration Provision in the Technology Services Agreement (Opp. at 6 n.7), and discovery is not required to resolve the question of whether the parties entered into a valid contract.  Discovery is only required where "facts [have been presented] sufficient to place the agreement to arbitrate in issue." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013).  In the case *sub judice*, there is no genuine dispute of material fact surrounding the arbitration agreement.

16

³ The First, Ninth and Eleventh Circuit Courts of Appeals have recently addressed arguments related to the Transportation Worker Exemption that are almost identical to those raised by the Parties in this litigation.  The First and Ninth Circuits have held that delivery drivers who transport goods on the last-leg of their interstate journey are engaged in interstate commerce as defined by the Transportation Worker Exemption even if the workers themselves never cross state lines.  *Rittmann v. Amazon.com*, Inc., 971 F.3d 904, 915 (9th Cir. Aug. 19, 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. July 17, 2020) ("[Plaintiff] and other last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers engaged in . . . interstate commerce, regardless of whether the workers themselves physically cross state lines.").  Interestingly enough, it would appear that the Eleventh Circuit rejected the argument that last-mile delivery drivers fell under the Transportation Worker Exemption simply by delivering goods that were placed in the stream of interstate commerce.  *Hamrick v. Partsfleet*, 1 F.4th 1337, 1351 (11th Cir. June 22, 2021).

⁴ Defendants argue that Delaware law should be applied to the Arbitration Provision based on the Choice-of-Law Provision in Section 15 of the Technology Services Agreement.  However, the Choice-of Law Provision explicitly rejects the application of Delaware law to the Arbitration Provision.  Therefore, the application of Delaware law would result in an illogical result.

⁵ This is a diversity action.  (Notice of Removal ¶ 8.)  A federal court sitting in diversity must apply the choice-of-law rules of the state in which the court sits to determine which state's law applies. *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x. 87, 90 (3d Cir. 2008); *Chin v. Chrysler, LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Pennsylvania employs a "flexible rule" which combines the "significant contacts" analysis of Restatement (Second) of Conflicts of Law § 145 and a "governmental interest analysis." *See Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964) ("[W]e are of the opinion that the strict *lex loci delicti* rule should be abandoned in Pennsylvania in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.").
Pennsylvania's choice-of-law analysis asks three questions: (1) is there an actual conflict or a false conflict between potentially applicable states' laws, (2) if there is an actual conflict, is there a "true conflict" based on the governmental interests underlying each law, and (3) if there is a "true conflict," which state has more significant contacts and a greater interest in its law being applied. *See Specialty Surface Intern., Inc., v. Continental Cas. Co.*, 609 F.3d 223, 229-36 (3d Cir. 2010); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227-36 (3d Cir. 2007).  If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law."  *Cipolla v. Shaposka*, 267 A.2d 854, 856-857 (Pa. 1970).  In *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978), the Court described the *Griffith* methodology as a combination of the "approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)."  *Id.* at 1311.  This analysis requires more than a "mere counting of contacts." *Cipolla*, 267 A.2d at 856.  If no actual conflict exists, the analysis stops there and the Court may apply the law of the state where it sits.  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir.

2006) ("In the absence of a conflict, the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply.").

[6]  Defendants argue that Delaware law should be applied in the absence of the Federal Arbitration Act.  However, this result would be illogical in the face of plain language specifically stating that Delaware law does not apply to the Arbitration Provision at issue.  (*See* Endnote 4 herein.)

[7]  Procedural unconscionability describes the process by which the parties entered into the contract.  The Pennsylvania Supreme Court has defined it as the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.*, 495 Pa. 540, 551 (Pa. 1981).  Procedural unconscionability is generally found in contracts of adhesion. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2002).  A contract of adhesion is one prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004).  The touchstone is whether the party challenging the agreement had any meaningful choice regarding acceptance of its provisions. *Thibodeau*, 912 A.2d at 886; *see also Hopkins v. NewDay Fin.*, LLC, No. 07-3679, 2008 U.S. Dist. LEXIS 52009 *2 (E.D. Pa. June 30, 2008).

[8]  Substantive Unconscionability: "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).  "To establish substantive unconscionability, the plaintiff must show that the contractual terms are unreasonably favorable to the drafter, and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Bullick v. Sterling Inc.*, No. 03-6395, 2004 U.S. Dist. LEXIS 21128 (E.D. Pa. Oct. 21, 2004); *Dabney v. Option Mortgage Corp.*, No. 00-5831, 2001 U.S. Dist. LEXIS 4949 at *5 (E.D. Pa. Apr. 19, 2001).